COMMONWEALTH *vs.* ROBERT A. HARVEY.

Essex. March 9, 1983. — September 21, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions.

On a motion to suppress the statement of a seventeen year old defendant made to police officers at a police station at 11:30 P.M., after he had declined to answer police questions on being given the Miranda warnings earlier in the day, the judge was warranted in finding that the defendant's statement had been elicited by police, and not volunteered by the defendant, where the circumstances of the late night action of the police, their words and their conduct showed a design to elicit an incriminating response from the defendant. [205-207]

COMPLAINTS received and sworn to in the First Essex Division of the District Court Department on November 17, 1981.

On appeal to the jury session a pretrial motion to suppress evidence was heard by *Russo,* J.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.

*Alan J. Karahalis* for the defendant.

ABRAMS, J. The Commonwealth appeals from a determination that a defendant's statement should be suppressed from evidence. Mass. R. Crim. P. 15 (a) (2), 378 Mass. 882 (1979). Conceding that the defendant was in custody and that the police had not informed the defendant of his constitutional rights, see *Miranda* v. *Arizona,* 384 U.S. 436 (1966), the Commonwealth claims that the statement was volunteered and, hence, should not be suppressed. We transferred the case here on our own motion. We affirm the trial judge's suppression order.

We summarize the evidence. On the night of November 14, 1981, a person, or persons, broke into the Salem Recreation Center, stole some items,[1] and damaged the center. Two Salem police officers were assigned to investigate the incident. At approximately 2 P.M. on November 16, 1981, the two officers went to the defendant's home. The defendant, then seventeen years of age, lived in Salem with his parents. The officers spoke with the defendant's father, told him what had occurred at the center, and requested that the defendant come to the station for questioning. The defendant agreed to accompany the police to the station. He was not placed under arrest. On the way to the station, the police recited the Miranda warnings and, on arrival at the station, the defendant signed a card stating that the police had informed him of his constitutional rights. The defendant told the police he did not want to talk; he declined to answer any questions, and was released.

Later the same day, one O'Donnell made a statement to the police which implicated O'Donnell and the defendant in the incident at the recreation center. Based on O'Donnell's statement, the police obtained a warrant for the defendant's arrest. Returning to the Harvey residence in the early evening, the police met the defendant's father outside his house and told him they had an arrest warrant for his son. The defendant was not at home. His father said that when the defendant returned home, they would come to the police station.

At approximately 11:30 P.M., the defendant's father called the police station and said that he was coming to the station with his son. When the defendant arrived at the station, he was accompanied by his father and grandfather. At the station the defendant, his father, and his grandfather were directed upstairs to the criminal investigation room where they met with the investigating officers and O'Donnell.[2]

---

[1] Because the defendant's statement did not lead to recovery of the items, he did not seek to suppress them.

[2] Although the police had an arrest warrant for the defendant, they did not book him on his arrival at the station. The record is silent as to whether

The defendant's father asked what the arrest was about. The police told the father what O'Donnell had said. The defendant's father said to the defendant, "Tell them what they want to know." Before the defendant replied, he asked to meet with O'Donnell to discuss the matter. After talking with O'Donnell, the defendant said that he and O'Donnell had caused some, but not all, of the damage to the recreation center.

The judge concluded that the police confronted the defendant with O'Donnell in an effort to interrogate him. Citing *Commonwealth* v. *Brant,* 380 Mass. 876, 883, cert. denied, 449 U.S. 1004 (1980), the judge also concluded that the defendant's statement was not volunteered because "the circumstances of the 11:30 P.M. action of the police, . . . 'their words and conduct were designed to elicit an incriminating response from' the defendant." The Commonwealth concedes that the defendant was in custody when he made his statement. See, e.g., *Oregon* v. *Mathiason,* 429 U.S. 492, 495 (1977); *Commonwealth* v. *King,* 387 Mass. 464, 474 (1982). The Commonwealth also concedes that the Miranda warnings read to the defendant earlier in the day were not effective at 11:30 P.M., and that the defendant did not make a knowing and intelligent waiver of his rights. However, the Commonwealth claims that the judge's conclusions are clearly erroneous because the statement was volunteered.

In reviewing a ruling on a motion to suppress, the judge's "subsidiary findings are to be respected if supported by the evidence; . . . his findings of ultimate fact deriving from the subsidiary findings are open to reexamination by this court, as are his conclusions of law, [but] his conclusion . . . is entitled to substantial deference." *Commonwealth* v. *Angivoni,* 383 Mass. 30, 33 (1981), quoting *Commonwealth* v. *Meehan,* 377 Mass. 552, 557 (1979), cert. dismissed as improvidently granted, 445 U.S. 39 (1980). See *Commonwealth* v. *Bookman,* 386 Mass. 657, 661 n.6 (1982).

the defendant was informed of his right to make a telephone call. See G. L. c. 276, § 33A; *Commonwealth* v. *Bouchard,* 347 Mass. 418, 419-420 (1964).

The judge's conclusions are supported by the record as a whole. The defendant, age seventeen, on being informed of the Miranda warnings earlier in the day, declined to answer police questions. On arrival at the station at 11:30 P.M., the police did not book him, although they had an arrest warrant. Instead, they brought him upstairs where O'Donnell was located and set up a situation which was "designed to undermine [the defendant's earlier] decision to remain silent and to persuade him to confess . . . contrary to the letter and the spirit of the *Miranda* decision." *Commonwealth* v. *Jackson,* 377 Mass. 319, 326 (1979). See *Commonwealth* v. *Brant, supra* at 885. Cf. *Commonwealth* v. *Williams,* 388 Mass. 846, 853-855 (1983). The judge drew the inference that the meeting between O'Donnell and the defendant was arranged in an effort to place the defendant in a situation where it would be difficult, if not impossible, for him to remain silent.[3] The inference drawn by the judge is reasonable, and his findings and conclusions are supported by the facts.

Moreover, there is evidentiary support for the judge's finding that the conduct of the police was designed to elicit an incriminating response. At one point in the suppression hearing, the officer characterized the circumstances in the police station as "questioning."[4] In reaching his conclusion, the judge could and did believe the officer's characterization of what had occurred. "This decision was based on the first-hand observation by the judge of the witness's demeanor and by a weighing of the evidence presented." *Commonwealth*

---

[3] Indeed, it appears to be the only reasonable inference from the facts. Neither at the suppression hearing nor on appeal has the Commonwealth suggested any reason to have the defendant meet with O'Donnell other than to obtain a statement from the defendant.

[4] The officer also said the police did not interrogate the defendant. The fact that the officer's testimony was contradictory does not render the judge's findings clearly erroneous. Credibility, of course, is for the trier of fact. A judge may accept or reject, in whole or in part, the testimony offered on a motion to suppress. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 377 (1978). See also *Commonwealth* v. *Fitzgerald,* 380 Mass. 840, 850 (1980).

v. *Hooks,* 375 Mass. 284, 289 (1978). There is no error in the judge's allowance of the defendant's motion.[5]

This matter is remanded to the District Court for trial.

*So ordered.*

---

[5] After arguments on the motion, the judge briefly engaged counsel in conversation as to whether the defendant's father and grandfather were agents of the police in light of their action in bringing the defendant to the station, their presence at the interrogation, and the father's statement to the defendant, "Tell them what they want to know." The judge did not make a written finding of fact that the defendant's father and grandfather were agents of the police and did not rely on such a finding in his rulings of law. His conclusion that the defendant was interrogated does not depend on whether these family members were agents of the police. Consequently, we do not address the Commonwealth's argument that the defendant's father and grandfather were not agents of the police, and that therefore the defendant's statement was volunteered and was not elicited. See *Commonwealth* v. *Smallwood,* 379 Mass. 878, 886-887 (1980); *Commonwealth* v. *Mahnke,* 368 Mass. 662, 667 (1975), cert. denied, 425 U.S. 959 (1976). See generally *Commonwealth* v. *A Juvenile,* 389 Mass. 128 (1983).