### COMMONWEALTH *vs.* LOUIS E. MELLO.

Bristol. December 8, 1994. - May 17, 1995.

Present: ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* Argument by prosecutor, Admissions and confessions, Voluntariness of confession, Waiver, Instructions to jury, Presumptions and burden of proof, Comment by judge, Assistance of counsel, Challenge to jurors, Capital case, Sentence, Duplicative punishment, Lesser included offense. *Evidence,* Admissions and confessions, Presumptions and burden of proof, Expert opinion. *Intoxication. Waiver. Malice. Homicide. Felony-Murder Rule. Judge. Constitutional Law,* Jury.

At a murder trial, no substantial risk of a miscarriage of justice was created by the prosecutor's inappropriate remarks in closing argument, in light of the entire argument, the evidence at trial, and the judge's instructions to the jury. [379-381]

At a murder trial, the judge's conclusion that the defendant's confessions were voluntary was clearly evident from the record of the hearing on the defendant's motion to suppress and the confessions were correctly admitted in evidence. [381-385] O'CONNOR, J., dissenting.

At a murder trial, no substantial risk of a miscarriage of justice was created by the judge's admitting in evidence the defendant's second confession, given six hours after he had been advised of his Miranda rights, where the lapse of time was not so significant in the circumstances that he should have been readvised of those rights. [385-387]

At a murder trial, no substantial risk of a miscarriage of justice was created by the judge's instructions to the jury on the defendant's voluntary intoxication and on the defendant's capacity to deliberately premeditate, which correctly stated the burden of proof. [387]

At a murder trial, an isolated instruction by the judge that may have tended to imply that the defendant's testimony was not worthy of belief created no substantial likelihood of a miscarriage of justice in the context of the entire charge. [387-389]

At a murder trial, there was no substantial likelihood of a miscarriage of justice created by the judge's instruction to the jury on the third prong of malice where the evidence demonstrated that the defendant, despite the evidence of his intoxication, knew that he set fire to an occupied apartment building at night and there was no evidence that would have

warranted a finding of a risk of harm to the occupants less than a strong likelihood of death. [389-390]

At a murder trial where the evidence of the defendant's intoxication was insufficient to negate a finding of deliberate premeditation, error, if any, in the judge's instruction with respect to the effect of the defendant's intoxication on the third prong of malice did not create a substantial likelihood of a miscarriage of justice. [390-391]

At the trial of a murder indictment on a felony-murder theory with arson as the underlying felony, there was no substantial likelihood of a miscarriage of justice created by the judge's instruction to the jury on conscious disregard for the risk to human life, inasmuch as the defendant was not entitled to such a favorable instruction. [391-392]

Certain gratuitous and inappropriate remarks by the judge at a first degree murder trial, which were neither intemperate nor critical of the attorneys, created no substantial likelihood of a miscarriage of justice; moreover, any prejudice was cured by the judge's instruction stressing the importance and seriousness of the trial. [392-393]

A defendant convicted of first degree murder did not demonstrate any prejudice as a result of alleged ineffective assistance of his trial counsel arising from defense counsel's failures to object to the prosecutor's closing argument, to allegedly defective jury instructions or to remarks by the judge, or arising from counsel's failure to raise a Miranda issue with respect to the defendant's second confession. [393-394]

A defendant convicted of murder in the first degree demonstrated neither ineffective assistance of trial counsel nor a substantial likelihood of a miscarriage of justice in his counsel's decision not to develop the issue of the defendant's intoxication through expert testimony; where there was substantial evidence at trial of the defendant's ability to formulate the requisite intent, counsel's failure to call an expert witness did not deprive the defendant of a substantial defense. [394-395]

At a murder trial, defense counsel did not render ineffective assistance of counsel by failing to exercise peremptory challenges to remove two jurors whom the judge had declared indifferent after voir dire [396]; further, the judge was not required to conduct an independent colloquy with the defendant regarding counsel's failure peremptorily to challenge the jurors [396-397].

No reason on the record of a murder trial appeared for this court to exercise its powers under G. L. c. 278, § 33E, to reduce a first degree murder verdict to second degree murder. [397]

In the circumstances of a criminal trial, where the jury may have convicted the defendant of second degree murder on the basis of a felony-murder theory with arson as the underlying felony, the defendant's conviction and sentence on the arson charge was duplicative. [398]

INDICTMENTS found and returned in the Superior Court Department on August 4, 1987.

A pretrial motion to suppress evidence was heard by *John D. Sheehan*, J.; the cases were tried before him; and a motion for a new trial was heard by him.

*Wendy Sibbison* for the defendant.

*Elspeth B. Cypher*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant appeals from his convictions of murder in the first degree, murder in the second degree, and arson,[1] and from the denial of his motion for a new trial based on the alleged ineffective assistance of defense counsel. On appeal, the defendant challenges: (1) the prosecutor's closing argument; (2) the admission of the defendant's confessions; (3) the jury instructions on mens rea; (4) the judge's allegedly undignified remarks and jokes; (5) the effectiveness of defense counsel in failing to investigate the use of an expert, failing to object, and failing to exercise peremptory challenges in the jury selection process; and (6) the convictions of arson and second degree murder as being duplicative. The defendant also asks us to exercise our power under G. L. c. 278, § 33E (1992 ed.), and reduce the first degree murder conviction to second degree murder.

The jury could have found the following facts. On July 19, 1987, at approximately 4:30 A.M., a fire broke out in a six-family apartment building in Fall River, killing Leonard Starcher and Edward Walsh. Both Starcher and Walsh were tenants in the apartment building. The fire had been started by a "molotov cocktail" thrown in the front porch area of the building.[2]

Starcher's apartment had been a "partying" place for a group of young people for some time. The defendant fre-

---

[1] A fourth conviction (for throwing an explosive device) was ordered placed on file with the defendant's consent.

[2] According to a State arson investigator who testified at trial, a "molotov cocktail" is a glass container filled with gasoline and a cloth wick. Once the cloth wick is ignited, the bottle is thrown so that the glass shatters and the vapors from the gasoline ignite.

quented Starcher's apartment, arriving each day at 10 or 11
A.M., and leaving sometime after midnight. While at the
apartment, the defendant would consume about a case of
beer a day, in addition to ingesting cocaine. Two of the de-
fendant's friends, Domingos Arruda and Nelson Tavares,
also frequented Starcher's apartment.

Several days before the fire, the police raided the defend-
ant's home. As a result of the raid, the defendant, his
mother, and her boy friend were arrested on drug charges.
The defendant told his girl friend that "whoever ratted on
him, his home getting raided, they're going to pay for what
they did."

On July 18, 1987, the day before the fire, the defendant
arrived at Starcher's apartment at 10 A.M., and stayed until 1
A.M. the next morning. During that period of time, the de-
fendant consumed a case of beer, and between 6:30 and 8
P.M., the defendant inhaled three and a one-half bags of her-
oin. At 11:45 P.M., the defendant spoke with his girl friend.
According to his girl friend, the defendant appeared to un-
derstand her and had no trouble walking, but appeared
"high."

At approximately 1 A.M., the defendant left Starcher's
apartment and returned home. At 3:30 A.M., the defendant
left his home, and met up with Arruda and Tavares.[3] Arruda
told the defendant that Starcher had "ratted him out," and
he urged the defendant to do something about it. Arruda
suggested that they burn Starcher's house down.

Although he lived only a short distance[4] from Starcher's
apartment building, the defendant returned home to retrieve
his mother's vehicle. The defendant admitted at trial that he
wanted the vehicle so that he could make a "quick getaway."
The defendant then picked up Arruda and Tavares, and the

---

[3]The defendant testified that, although he usually used the back door to
leave his apartment, on this particular night, he left through the front door
so as to not wake his mother.

[4]The defendant's apartment was approximately eighty feet from
Starcher's apartment building.

three men drove around before finally parking on the corner near Starcher's building.

As the defendant and Tavares waited at the corner, Arruda left on foot and returned with a can of gasoline. Arruda grabbed a glass bottle, and poured the gasoline into the container. The defendant then stuffed a cloth rag in the bottle and lit the wick, and Arruda threw the molotov cocktail into the cement area under the wooden porch of Starcher's apartment building. At trial, the defendant explained how the molotov cocktail had been thrown specifically into the cement area under the porch so that the glass would break and the device would explode.

Once the molotov cocktail hit the porch area, it exploded and the porch caught fire. The defendant's vehicle also caught fire, which the defendant attempted to stamp out with his feet. As the fire continued to burn, the three men jumped into the vehicle and drove away. Realizing that his sneakers were blackened, the defendant drove to a nearby dumpster and threw the sneakers away. He then returned home and instructed his companions, "You guys don't know me and I don't know you." Although many of the residents escaped, Starcher and another tenant in the building, Edward Walsh, died in the fire.

1. *Prosecutor's closing argument.* The defendant first contends that the prosecutor's closing argument was improper and inflammatory such that a new trial is required.[5] Because

---

[5] The prosecutor argued in his closing: "[T]he defendant says that it is society that is to blame. And [it's] his drug addiction and his liquor abuse that are to blame. Yes, he may have killed two people. The fault is not his, apparently, as his argument goes, but it's society's. It's drugs. It's liquor. Well, I can't answer for all of society, but I suggest to you that this trial does raise a question which maybe none of us would satisfactorily be able to answer. And that is what have we become? . . . Where three young men, 16, 17, and 18 years old, can go out in the middle of the night and firebomb a house filled with people in which two people die. What have we become where they can even consider such an act, even consider it? Two people died. Fourteen, fifteen, sixteen people rendered homeless. What have we become? But that's not the question before you today. Because I suggest to you that whatever it is we've become, we can do something about it by rejecting the very conduct with which this defendant is

there was no objection, the standard of review is whether the prosecutor's argument created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 450 (1993); *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 n.8 (1987). "We analyze the remarks in 'light of the entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.' " *Commonwealth* v. *Marquetty*, *supra*, quoting *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 746 (1990).

Although we agree that the prosecutor's statements urging the jury to do their duty and render a guilty verdict went beyond the bounds of permissible advocacy, *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375 (1989), we cannot say that in light of the entire argument, the evidence at trial, and the instructions to the jury that the statements created a substantial likelihood of a miscarriage of justice. "The fact that the defendant did not object, '[a]lthough not dispositive of the issue . . . is some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial.' *Commonwealth* v. *Toro*, 395 Mass. 354, 360 (1985)." *Id.* Further, several of the prosecutor's challenged remarks were in response to the defense counsel's closing argument which invited the jurors to sympathize with the defendant and suggested that society is equally to blame for the defendant's actions.[6] *Commonwealth* v. *Kozec*, *supra* at 519 n.9 (a prosecutor may properly

charged, by saying to this defendant and all others that may even consider similar conduct: 'We will not tolerate it. We've had enough, and we're going to do something about it when given the opportunity.' And this trial gives you the opportunity."

[6] In his closing argument, the defense counsel argued: "Or will you think of another victim? Because he's a victim now and he'll be a victim for the rest of his life . . . And people, strong people, they're strong characters that move out of there and become lawyers, doctors, priests, ministers, and there are others that go to Cedar Junction. Cedar Junction. Because they're not strong. Or they don't have the family to help them."

Defense counsel further argued that "[the defendant] was no more responsible for that than the people who permitted it to exist, the sellers of drugs, the law enforcement people who don't go after them, and the . . . situation which existed."

comment to the extent necessary to correct an erroneous impression created by opposing counsel). In addition, the prosecutor did not urge the jury to disregard the intoxication evidence, rather, the prosecutor properly argued that, although intoxication is to be considered, the evidence in this case demonstrated that the defendant was not so intoxicated as to be incapable of forming the requisite intent. Moreover, the jury were instructed on the effects of voluntary intoxication on the defendant's ability to form the requisite intent, and that they should decide the case solely on the evidence before them. Finally, because there was significant evidence as to the defendant's guilt, we conclude that the prosecutorial error did not create a substantial likelihood of a miscarriage of justice.

2. *Admissions of two confessions without a finding of voluntariness.* Prior to trial, an evidentiary hearing was held to determine whether the written confessions made by the defendant should be suppressed. The defendant contended in his motion to suppress that the confessions were not voluntary because he was intoxicated at the time he made them. After the hearing, the judge made an express finding denying the defendant's motion, but he failed to make specific findings of fact.[7] The defendant now contends that a new trial should be ordered because the judge admitted the confessions without making a finding that they were voluntary beyond a reasonable doubt.

In *Commonwealth* v. *Fernette,* 398 Mass. 658, 663 (1986), we repeated the well-established standards for review of a trial judge's determination of voluntariness[8] and then stated the following: "If the judge finds that the defendant's state-

---

[7]The judge should have made subsidiary and ultimate findings of fact and stated his conclusions of law. The judge has now retired from the bench so a remand for findings and conclusions cannot be made.

[8]Namely, an appellate court accepts the judge's subsidiary findings of fact absent clear error, gives substantial deference to the judge's ultimate findings and conclusions of law, but independently reviews the correctness of the judge's application of constitutional principles to the facts found. *Commonwealth* v. *Fernette,* 398 Mass. 658, 662-663 (1986).

ment is voluntary beyond a reasonable doubt, 'that conclusion "must appear from the record with unmistakable clarity." ' *Commonwealth* v. *Tavares*, [385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982)], quoting *Sims* v. *Georgia*, 385 U.S. 538, 544 (1967)." The *Sims* decision, involved a situation in which a defendant properly raised the issue of the voluntariness of his confession, conflicting testimony was received on the issue, and the judge failed to rule on the matter at all, leaving the question solely to the jury for their deliberation. *Sims* v. *Georgia*, supra at 541. The United States Supreme Court concluded that error had occurred, indicating that, before a contested confession of a defendant is submitted to a jury, the judge must make a preliminary ruling on the record that the confession is voluntary. *Id.* at 544. The Court then noted: "Here there has been absolutely no ruling on that issue and it is therefore impossible to know whether the judge thought the confession voluntary or if the jury considered it as such in its determination of guilt." *Id.*

This is not the situation in this case. The judge concluded, and expressly ruled on the record, that he had found the defendant's confession voluntary, thereby rejecting the defendant's claims that the confessions were involuntary because of intoxication. We do not accept the defendant's assertion that the judge may not have reached the determination "beyond a reasonable doubt." The judge submitted the issue of voluntariness to the jury, as he was required to do, under comprehensive instructions of law that indicated his awareness of the proper standard of proof.[9] It makes no sense to think that the judge knew the standard which governed the jury's deter-

---

[9]The judge instructed the jury thoroughly on the issue of voluntariness, and on three separate occasions instructed the jury on the appropriate standard of proof. The judge concluded his instruction on voluntariness with the following:

"You, the jury, and I so instruct you, are not to consider the defendant's statement unless, upon the whole evidence in this case, you are satisfied beyond a reasonable doubt that such statements were the free and voluntary act of the defendant."

The judge also went on to explain to the jury the significance of Miranda warnings. He instructed the jury that they had to decide that the

mination of voluntariness, but may not have apprehended that the same standard applied to his decision on the motion to suppress. We conclude that the record is satisfactory on the point of the necessary preliminary ruling.

As has been noted, see note 7, *supra*, the judge has retired. Since his ultimate conclusion that the defendant's confessions were voluntary is clearly evident from the record, his denial of the defendant's motion implies his resolution of factual and credibility issues in favor of the Commonwealth. See *Commonwealth* v. *Lanoue*, 392 Mass. 583, 586 & n.2 (1984).

In reviewing the defendant's contention, we are mindful of the two questions before us: (1) whether there has been a knowing and intelligent waiver of the Miranda requirements; and (2) whether, in the totality of the circumstances, the confessions given were the product of a free will, and not the result of coercion or intimidation. *Commonwealth* v. *Parham*, 390 Mass. 833, 838 (1984). The Commonwealth must demonstrate voluntariness beyond a reasonable doubt, and evidence of this must affirmatively appear from the record. *Id.* Although intoxication alone is insufficient to negate an otherwise voluntary act, special care is taken to review the issue of voluntariness where the defendant claims to have been under the influence of drugs or alcohol. *Id. Commonwealth* v. *Doucette*, 391 Mass. 443, 448 (1984).

We first consider whether there was a knowing and intelligent waiver of the defendant's Miranda rights. See *Commonwealth* v. *Parham, supra; Commonwealth* v. *Brady*, 380 Mass. 44, 52 (1980). Officer Gene Rodrigues of the Fall River police department testified that the defendant spoke coherently with the police, appeared sober, and explained in detail the preparation and actual setting of the fire, all of which is indicative of the fact that the defendant's mind was not overtaken by drugs or alcohol. See *Commonwealth* v. *Bousquet*, 407 Mass. 854, 861 (1990); *Commonwealth* v. *La-*

---

warnings had been given, understood, and waived before they could find the defendant's confession to be voluntary.

*noue, supra* at 589. Rodrigues also testified that the defendant had not complained of being ill during his time at the station, nor did the defendant appear to have any difficulty understanding any questions posed to him. Furthermore, there was evidence that the defendant was advised of his Miranda rights, signed a Miranda waiver form, stated that he understood his rights, and agreed to talk to the police. Although there was conflicting testimony as to whether the defendant had been properly advised of his rights, the motion judge was entitled to credit the testimony of the police officer over the testimony of the defendant.[10] *Commonwealth* v. *Parham, supra* at 839-840 (trial judge free to disbelieve defendant's statements at suppression hearing regarding the recital of Miranda warnings). The question was clearly one of credibility for the finder of fact, and we will not substitute our judgment for that of the trial judge. *Commonwealth* v. *Bousquet, supra* at 861-862.[11] The judge did not err when he concluded that the defendant knowingly and intelligently waived his Miranda rights.

We next consider whether the defendant's confession itself was a free and voluntary act, or whether, under the totality of relevant circumstances, the confession was the product of physical or psychological coercion. *Commonwealth* v. *Parham, supra* at 840. There was no evidence of physical coercion, as in *Commonwealth* v. *Harris,* 371 Mass. 462, 466-467 (1976), and the record does not reveal the use of

---

[10]The defendant testified at the suppression hearing that he received and signed a Miranda rights form, but that he did not recall the police explaining to him the contents of the form. He further testified that he was not told that he had a right to obtain a lawyer. Officer Rodrigues testified that in addition to giving the defendant the Miranda rights form, the police orally advised the defendant of his rights. Rodrigues testified that after signing the form, the defendant stated that he understood his rights, and agreed to speak with the police.

[11]The defendant also contends that he was deprived of his right to use the telephone in violation of G. L. c. 276, § 33A (1992 ed.). The record shows, however, that the defendant was advised of his right to make a telephone call at the time he signed the Miranda waiver form. Furthermore, there was testimony both at trial and at the suppression hearing that the defendant made a telephone call sometime after his first confession.

any excessive police pressure or unfair tactics. See *Commonwealth* v. *Silva*, 388 Mass. 495, 503 (1983), and cases cited. Although there was evidence that the defendant had ingested beer and inhaled heroin the night before his arrest, this alone does not compel the conclusion that the defendant's confession was involuntary. *Commonwealth* v. *Parham*, *supra* at 840. Faced with the testimony of the police officer that the defendant appeared sober and coherent, the lack of any threats or unfair police tactics, and the fact that the defendant was advised of his rights and agreed to talk to the police, the judge was warranted in concluding that the defendant confessed voluntarily.

3. *Miranda warnings.* The defendant next contends that the trial judge erred in admitting the defendant's second confession which he gave approximately six hours after the Miranda warnings were administered. Because the defendant did not raise the issue at trial or at the suppression hearing, we consider whether there is a substantial likelihood that a miscarriage of justice has occurred. *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992).

The defendant was advised of his Miranda rights at 4:55 P.M. He gave his first confession to the police at approximately 5:30 P.M., at which time he claimed sole responsibility for the crime. The defendant was then booked and taken to the police garage in order to answer questions regarding the vehicle he drove the night of the fire. Unable to explain the erratic burn patterns that appeared on the passenger side of the vehicle, the defendant admitted that he did not act alone. At 10:45 P.M., the defendant wrote a second confession implicating Tavares and Arruda in the crime.[12]

"We recognize that '*Miranda* warnings, once given, are not to be accorded unlimited efficacy or perpetuity,' " *Commonwealth* v. *Cruz*, 373 Mass. 676, 687 (1977), quoting

---

[12]According to the Commonwealth's witnesses, the defendant gave his second confession *orally* at approximately 6:30 P.M. It was not until 10:45 P.M., however, that the defendant reduced this second confession to writing. Thus, according to the Commonwealth's witnesses, the second confession was given less than two hours after the initial warnings were given.

*United States* v. *Hopkins*, 433 F.2d 1041, 1045 (5th Cir. 1970), cert. denied, 401 U.S. 1013 (1971). However, "there is no requirement that an accused be continually reminded of his rights once he has intelligently waived them." *Biddy* v. *Diamond*, 516 F.2d 118, 122 (5th Cir. 1975), cert. denied, 425 U.S. 950 (1976), quoting *United States* v. *Anthony*, 474 F.2d 770, 773 (5th Cir. 1973). "Generally, where there has been a significant lapse of time between initial Miranda warnings and inculpatory statements, 'the ultimate question is: Did the defendant, with a full knowledge of his legal rights, knowingly and intentionally relinquish them?' " *Commonwealth* v. *Cruz, supra* at 687, quoting *Miller* v. *United States*, 396 F.2d 492, 496 (8th Cir. 1968), cert. denied, 393 U.S. 1031 (1969).

We conclude that, in light of all the circumstances, the lapse of time between the initial warnings and the defendant's second confession was not so significant that renewed Miranda warnings were required. See *Commonwealth* v. *Silva, supra* at 502 (time lapse of approximately three hours not significant); *Commonwealth* v. *Cruz, supra* (time lapse of approximately three and one-half hours not significant). See also *Stumes* v. *Solem*, 752 F.2d 317, 320 (8th Cir.), cert. denied, 471 U.S. 1067 (1985) (six and one-half hours between warnings and waiver not too long); *United States ex rel. Henne* v. *Fike*, 563 F.2d 809, 814 (7th Cir. 1977), cert. denied, 434 U.S. 1072 (1978) (nine hours between warnings and waiver not too long). Furthermore, at no point in the proceedings did the defendant request an attorney or assert his right to silence. See *Commonwealth* v. *Harvey*, 390 Mass. 203, 205-206 (1983) (statement suppressed where defendant advised of rights, asserted right to remain silent, and approximately eight hours later police elicited statement without readvising him of his rights). Finally, there is ample evidence in the record to warrant the inference that the defendant fully understood his legal rights, and knowingly and intentionally waived them. *Commonwealth* v. *Cruz, supra* at 688. Because we conclude that there was no Miranda violation, we need not address the defendant's contention that the

judge was required sua sponte to address the issue of renewed Miranda warnings.

4. *Voluntary intoxication and deliberate premeditation instruction.* The defendant next contends that the judge's charge on intoxication and deliberate premeditation was erroneous because it impermissibly shifted the burden of proof to the defendant. Because the defendant failed to object at trial, we limit our review to whether any error in the challenged instruction created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Bousquet, supra* at 865 n.6.

The defendant claims that the following portion of the charge was "a grave misstatement of the law": "as a general law, a person may be unconscious of what he is doing due to the voluntary ingestion of either drugs or alcohol yet be held criminally responsible for his conduct." We disagree. In *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615, 617-618 (1949), we held that the instruction "[o]ne may be perfectly unconscious of what he is doing and yet be responsible for his conduct during drunkenness," was a correct and accurate statement of the law. We reaffirmed the use of such language in *Commonwealth* v. *Lanoue, supra* at 592 n.6, where we recommended the voluntary intoxication instruction from *Delle Chiaie*. See *Commonwealth* v. *Freiberg*, 405 Mass. 282, 303, cert. denied, 493 U.S. 940 (1989) (exact language of *Delle Chiaie* is not required for voluntary intoxication instruction).

The defendant next contends that the judge's instruction that the jury should have to "find" that the defendant was intoxicated impermissibly shifted the burden of proof to the defendant. See *Commonwealth* v. *Kelcourse*, 404 Mass. 466, 469 (1989). "Not every isolated use of the words 'find' or 'found' creates a burden-shifting presumption." *Commonwealth* v. *Gilchrist*, 413 Mass. 216, 223 (1992). Although there was "finding" language in the jury instruction, the charge as a whole clearly established that the Commonwealth had the burden to prove that the defendant had the specific intent to premeditate beyond a reasonable doubt.

*Commonwealth* v. *Kelcourse, supra.* The judge also properly instructed the jury that they could consider evidence of the defendant's intoxication when deciding whether the Commonwealth proved beyond a reasonable doubt that the defendant was capable of deliberately premeditating. Moreover, other language which the defendant contends shifted the burden of proof was equally mitigated by the judge's repeated and proper instructions as to the Commonwealth's burden of proof. Finally, we note the similarity between the judge's charge in the present case and the voluntary intoxication instruction approved of in *Commonwealth* v. *Bousquet, supra* at 867 n.7.[13]

The defendant next contends that the judge's instructions suggested to the jury that the defendant's testimony was not worthy of belief. "[A]n isolated instruction that may 'imply denigration or disbelief of a defendant's testimony,' is best avoided even though the implication may be counteracted when the charge is viewed as a whole." *United States* v. *Dwyer*, 843 F.2d 60, 63 (1st Cir. 1988), quoting *Lannon* v. *Hogan*, 719 F.2d 518, 524 (1st Cir. 1983), cert. denied, 465 U.S. 1105 (1984). Although the challenged instruction in isolation may have impermissibly warned the jury not to accept the defendant's testimony, in the context of the entire charge, the instruction did not create a substantial likelihood of a miscarriage of justice. The judge properly instructed the jury they alone must decide the issue of credibility. The judge also instructed the jury that they were to decide the issue of intent by considering not only the defendant's expression of intent, but also the circumstances surrounding the defendant's actions. Finally, the judge instructed the jury

---

[13]The defendant also challenges the judge's instruction that intoxication can be the "basis for reducing what the jury would otherwise find to be first degree murder or second degree murder to either second degree murder or manslaughter." We agree that the instruction was erroneous. Intoxication does not operate to reduce a crime that the jury "would otherwise find to be first degree murder," nor does it operate to reduce a first degree murder charge to manslaughter. Because the charge favors the defendant, however, there is no substantial likelihood of a miscarriage of justice.

that he had not formed any opinions on the case, and that they should not look to the court for guidance on how the case should be decided. Because any implication that the defendant's testimony was not worthy of belief was counteracted by the charge as a whole, there was no substantial likelihood of a miscarriage of justice.

5. *Malice instruction.* The defendant next contends that the judge's malice instruction reduced the Commonwealth's burden of proof. Because there were no objections at trial, we limit our review to whether there was a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Burke*, 414 Mass. 252, 265 (1993).

We begin by noting that the malice instruction challenged by the defendant closely resembles the instruction we approved in *Commonwealth* v. *Ferreira*, 417 Mass. 592, 597-598 & n.7 (1994). As in *Ferreira*, the judge did not suggest that malice was to be presumed or implied, and stressed the Commonwealth's burden of proof and the defendant's presumption of innocence. *Id.* In addition, the judge properly instructed the jury on the first two prongs of malice.

As to the third prong of malice, the jury were instructed:

> "Malice may be inferred on an occasion where a reasonable, prudent person in the circumstances the defendant found himself would have known that, according to common experience, there was a probability of causing grievous bodily harm and a plain likelihood of death as a result of the act that the defendant performed."

The defendant argues that the judge failed properly to instruct the jury on the subjective and objective components of the third prong of malice, and failed to instruct on the proper risk of harm needed for the third prong of malice. Although we agree that the malice instruction was not error free, there was no substantial likelihood of a miscarriage of justice.

When deliberating as to the third prong of malice, a jury must consider (1) the nature and extent of the defendant's

knowledge of the circumstances at the time he acted (subjective component); and (2) whether, in the circumstances known by the defendant, a reasonably prudent person would recognize that the defendant's conduct would create a plain and strong likelihood of death (objective component). *Commonwealth* v. *Sama*, 411 Mass. 293, 298 (1991). In order to establish the third prong of malice, the Commonwealth had the burden of demonstrating that the defendant knew that he was setting fire to an occupied apartment building, and that a reasonably prudent person, although not necessarily the defendant, would recognize that such conduct carried with it the risk of death. *Id.*

Despite evidence of the defendant's intoxication, the evidence clearly showed that the defendant knew that he set fire to an occupied six-family apartment building.[14] Further, in light of the circumstances known to the defendant at the time the fire was set, a reasonable person would conclude that the defendant's actions created a plain and strong likelihood of death. The defendant and his companions set fire to a six-family apartment building. The explosive device had been thrown in the front porch area of the building thereby blocking the primary means of egress. Furthermore, the fire had been set in the middle of the night while the occupants of the building were sleeping. There was no evidence that would have warranted, on the facts known to the defendant, a finding of a risk of harm less than a strong likelihood of death. See *Commonwealth* v. *Sires*, 413 Mass. 292, 303 (1992).

The defendant next contends that the judge erred in foreclosing the jury from considering evidence of intoxication on the third prong of malice. See *Commonwealth* v. *Sama, supra* at 297. The judge properly instructed the jury on the first two prongs of malice. In addition, the judge properly

_____

[14]At trial, the defendant testified that he had assisted in the construction of the molotov cocktail, and that the cocktail had been thrown directly into the cement area of the porch so that the glass would break and the device would explode. The defendant also admitted that he had been aware that the building was "filled with people" at the time the fire was set.

instructed the jury that they could consider evidence of intoxication in determining whether the defendant acted with deliberate premeditation, and whether the defendant possessed the requisite specific intent. "We have said that where, as here, the jurors conclude that a defendant is guilty of murder in the first degree by reason of deliberate premeditation, and the jury instructions are correct on the first two aspects of malice (i.e., specific intent) and on deliberate premeditation, error, if any, in the omission of the effect of intoxication on the third aspect of malice is nonprejudicial." *Commonwealth* v. *Wallace*, 417 Mass. 126, 134-135 (1994). As the evidence of intoxication was insufficient to negate a finding of deliberate premeditation, any omission from the instruction on the third prong of malice did not create a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Costa*, 414 Mass. 618, 628 (1993).

6. *Conscious disregard instruction.* The defendant was convicted of second degree murder for the death of Edward Walsh. The judge instructed the jury on felony-murder with arson as the underlying felony, and included an instruction on conscious disregard for the risk to human life. The defendant argues that the judge's instruction on conscious disregard impermissibly reduced the Commonwealth's burden of proof.

"[I]n order for [a] case to come within the felony-murder rule, the underlying felony . . . must be inherently dangerous to human life or the crime actually must have been committed with conscious disregard on the part of the defendant for the risk to human life." *Commonwealth* v. *Ortiz*, 408 Mass. 463, 466 (1990), denial of habeas corpus aff'd, 19 F.3d 708 (1st Cir. 1994), cert. denied, 115 S. Ct. 739 (1995). The defendant was not entitled to an instruction on conscious disregard because the underlying felony, arson, is inherently dangerous to human life. *Commonwealth* v. *Matchett*, 386 Mass. 492, 505 n.15 (1982). Because the judge's instruction was more favorable to the defendant than the law required, there is no substantial likelihood of a mis-

carriage of justice. See *Commonwealth* v. *Simmons*, 417 Mass. 60, 69-71 (1994).

7. *Judge's remarks.* The defendant next argues that he was denied a fair trial because the judge's remarks created an atmosphere of levity that diminished the seriousness of the trial.[15] Because no objections were lodged at trial, the appropriate standard of review is whether the judge's comments created a substantial likelihood of a miscarriage of justice.

Although many of the judge's comments were inappropriate for a first degree murder trial, we do not think that the jury "became so intoxicated by the fun as to fail in their duties." *Commonwealth* v. *Stanton*, 17 Mass. App. Ct. 1, 5 (1983). We further note that because the judge's remarks were neither intemperate nor critical of the attorneys, there was no danger that the judge exhibited to the jury a bias against the defendant. See *Commonwealth* v. *Sylvester*, 388 Mass. 749, 750 (1983) (judge's critical and harassing comments to defense counsel in presence of the jury deprived the defendant of a fair trial). Furthermore, any prejudice that may have resulted from the judge's remarks was cured by the judge's charge which stressed the importance and seriousness of the trial. Although we discourage gratuitous remarks by judges, we cannot conclude that in the present case

---

[15]We include several of the judge's remarks that the defendant challenges on appeal. Following the jury selection process, the judge congratulated those individuals who were not chosen to sit on the defendant's jury as having "escaped" and as "you lucky people." The judge also stated that it was his practice to break twice a day because "it gets kind of tiresome just sitting here, for all of us." Later in the trial, referring to a sketch drawn by the prosecutor, the judge stated that "[i]t won't win any art prizes." During the direct examination of the defendant's former girl friend, the prosecutor asked the witness to identify her former boy friend. After the witness pointed to the defendant and said "the one in the middle," the judge added, referring to the defendant's trial counsel, "Harrington, you wish." The defendant also claims prejudicial error in the judge's comments that "[w]e've just done away with the clerk," and to a witness "[h]ey, we'll eliminate you, too, if he keeps that up." Finally, following closing arguments, the judge announced "I've always thought oratory was the best cure for insomnia."

the judge's behavior created a substantial likelihood of a mis-carriage of justice.

8. *Ineffective assistance of counsel.* The defendant alleges several errors on the part of defense counsel which the de-fendant claims amounted to ineffective assistance of counsel. Specifically, the defendant argues that defense counsel erred in (1) failing to investigate the use of an expert on the issue of intoxication and failing to investigate the mental history of the defendant; (2) failing to exercise peremptory challenges; (3) failing to object to the prosecutor's closing argument, the defective jury instructions, and the allegedly improper re-marks by the judge; and (4) failing to raise the issue of the need for renewed Miranda warnings.

In reviewing claims of ineffective assistance of counsel, we have stated that our inquiry is "whether there has been seri-ous incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).[16] In a capital case, however, we review such claims pursuant to G. L. c. 278, § 33E, a standard of review that is even more favorable to the defendant. *Commonwealth* v. *Plant,* 417 Mass. 704, 715 (1994). Under that standard of review, we need not focus on the adequacy of trial counsel's performance, but rather we focus on "whether there was an error . . . (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influ-enced the jury's conclusion." *Commonwealth* v. *Wright,* 411 Mass. 678, 682 (1992). See *Commonwealth* v. *Marquetty,* 416 Mass. 445, 452 (1993). Because we have previously dis-posed of the claims of prejudice arising from the prosecutor's closing argument, the judge's remarks, the jury instructions,

---

[16]The defendant bases his claim of ineffective assistance of counsel on Federal and State constitutional grounds. We have said that in our view, "if the *Saferian* test is met, the Federal test is necessarily met as well." *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985).

and the admission of the defendant's confession, we need not repeat that analysis here. See *Commonwealth* v. *MacKenzie*, 413 Mass. 498, 517-518 (1992).

a. *Failure to investigate the use of an expert.* At the hearing on the motion for new trial, Dr. Milton Burglass, a physician specializing in addiction medicine and neuropsychiatry, testified on behalf of the defendant. After reviewing the defendant's trial testimony and postarrest statements, as well as the defendant's medical, psychiatric, and psychological records, Dr. Burglass concluded that the defendant was incapable of acting with deliberate premeditation, malice, or conscious disregard for the risk to human life. Dr. Burglass based his conclusions on his findings that the defendant's cognitive abilities were seriously impaired due to chronic alcohol and drug abuse, alcohol and drug intoxication, organically based brain dysfunction (attention deficit disorder), and multiple head injuries.

Defense counsel also testified at the motion hearing. He testified that although he considered the use of an expert, he decided against it for fear that an expert would not enhance the defense. The trial judge denied the defendant's motion for a new trial.

The defendant claims that defense counsel's failure to develop the intoxication issue through expert testimony constituted ineffective assistance of counsel. We are unpersuaded, however, that counsel's decision not to introduce expert testimony on this issue was likely to have influenced the jury's verdict. *Commonwealth* v. *Plant, supra* at 716. First, defense counsel's failure to call an expert witness did not deprive the defendant of a substantial defense. Evidence of voluntary intoxication is admissible to negate the elements of deliberate premeditation and malice aforethought. *Commonwealth* v. *Henson*, 394 Mass. 584, 593-594 (1985). Defense counsel protected this line of argument by eliciting testimony from the defendant regarding his state of intoxication, and by requesting a jury instruction based on *Henson*.

Second, despite his ingestion of alcohol and heroin the night of the killing, there was substantial evidence that the

defendant was capable of possessing, and did, in fact, possess the requisite intent. The defendant was able to recall with specific detail the events of the crime. He appeared to have no trouble walking, and spoke coherently several hours before the fire. The defendant's testimony revealed that on the night of the fire he had the composure to slip quietly out of his house, drive a car, and construct a molotov cocktail. Moreover, the defendant had the presence of mind to appreciate the need for a "quick get-away," and to tell his friends after fleeing the scene, "You guys don't know me and I don't know you." Finally, the defendant admitted that he had set the fire, and that he had been aware that people were in the apartment building while it was being torched. In short, the evidence clearly demonstrated that the defendant was not so overcome by intoxicants as to be incapable of murder in the first degree. See *Commonwealth* v. *Bousquet*, 407 Mass. 854, 863-864 (1990) (decision not to call expert did not amount to ineffective assistance of counsel where evidence overwhelmingly demonstrated that defendant was capable of possessing requisite intent); *Commonwealth* v. *Griffith*, 404 Mass. 256, 262 (1989) (defense counsel's failure to develop intoxication defense through expert testimony did not constitute ineffective assistance where expert testimony would not have accomplished something material for defense); *Commonwealth* v. *Doucette*, 391 Mass. 443, 458 (1984) (no ineffective assistance of counsel where evidence did not support finding that defendant was so overcome by intoxicants as to be incapable of first degree murder). See also *Williams* v. *Dixon*, 961 F.2d 448, 451 (4th Cir.), cert. denied, 506 U.S. 991 (1992); *Keys* v. *Duckworth*, 761 F.2d 390, 394 (7th Cir. 1985). Counsel's decision not to introduce expert testimony on this issue, did not, therefore, create a substantial likelihood of a miscarriage of justice.[17]

---

[17]The defendant also argues that defense counsel's failure to investigate the defendant's psychiatric history was ineffective assistance of counsel as it deprived the defendant of a substantial defense of mental impairment. See *Commonwealth* v. *Grey*, 399 Mass. 469, 470 (1987). Defense counsel did in fact investigate the defendant's psychological history through a se-

b. *Failure to exercise peremptory challenges.* The jurors were initially screened by the trial judge. The judge asked the prospective jurors whether they knew or were related to anyone involved in the case, and whether they had formed any opinions, bias or prejudice about the case. The judge also conducted an individual voir dire with any juror who appeared to have a potential bias or connection with the case. Several jurors who had relatives working in firefighting or law enforcement, and who expressed a concern about their ability to be impartial, were dismissed. Two of the jurors, however, who admittedly had relatives involved in law enforcement or firefighting, were allowed to sit on the jury.

The defendant contends that failure of defense counsel to challenge these two jurors amounted to ineffective assistance of counsel. We disagree. In response to the judge's questions regarding their ability to be impartial, each juror expressed a belief that he or she would be able to be fair and impartial throughout the trial. Since defense counsel was satisfied that the jurors could be impartial, there was no reason to challenge the jurors.

The defendant further urges this court to adopt a rule that counsel's failure to exercise peremptory challenges without placing his client's consent on the record is the equivalent of the absence of counsel at a critical stage of the proceedings, and is reversible error without a showing of prejudice. We decline to adopt such a rule. See *Commonwealth* v. *Owens*, 414 Mass. 595, 606 (1993) (declining to adopt per se rule of prejudice when defendant was excluded from examination of prospective jurors). Although the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution guarantee the right to be tried by an impartial jury, there is no Federal or State constitutional right to exercise peremptory challenges. *Commonwealth* v. *Wood*, 389 Mass. 552, 559 (1983).

ries of interviews with the defendant. Although further investigation into the defendant's mental history may have been warranted, given the substantial evidence of the defendant's ability to formulate the requisite intent, there was no substantial likelihood of a miscarriage of justice.

We also decline to adopt the defendant's suggestion that where defense counsel fails to exercise any peremptory challenges, a trial judge is required to conduct an independent colloquy with the defendant to ensure that he (1) understands his right to an impartial jury; (2) is satisfied with the jury as approved by his attorney; and (3) waives his right to exercise any peremptory challenges. Such a rule would unnecessarily and impermissibly interfere with the jury selection process, and would place the judge in the awkward position of acting as the defendant's advocate. The judge conducted an initial screening of the jurors and declared them indifferent. He was under no further obligation to ensure that the defendant waived his right peremptorily to challenge potential jurors.

9. *G. L. c. 278, § 33E.* The defendant also asks this court to exercise its power under G. L. c. 278, § 33E, to reduce the defendant's first degree murder verdict to second degree murder. We have reviewed the entire record and conclude that reduction of the verdict is not warranted.

We further note that the fact that the trials of the codefendants may have resulted in different outcomes does not warrant a reduction of the verdict in this case. "[T]he mere inconsistency of the verdicts . . . is not ordinarily enough to impel us to exercise our powers under § 33E." *Commonwealth* v. *Pisa,* 372 Mass. 590, 597, cert. denied, 434 U.S. 869 (1977); *Commonwealth* v. *Simpson,* 370 Mass. 119, 126-127 (1976). Finally, we reject the defendant's contention that he received a "minimalist trial." The defendant was assigned adequate counsel, received a hearing on his motion to suppress, and had a four-day jury trial. Although appellate counsel might have pursued alternative trial strategies, defense counsel's performance was not so inadequate as to deprive the defendant of his right to counsel. Furthermore, the trial itself was not so "riddled with error" that it lacked the appearance of fairness and impartiality necessary to satisfy due process. See *Commonwealth* v. *Howard,* 367 Mass. 569, 572 (1975).

10. *Duplicative sentences.* The defendant's final contention is that, since arson is a lesser included offense of second degree murder on a felony-murder theory, the court's imposition of concurrent sentences for arson and second degree murder is duplicative. We agree.

The jury were instructed on a felony-murder theory of second degree murder, with arson as the underlying felony. The jury convicted the defendant both of second degree murder for the death of Walsh, and of arson. "[W]henever the possibility exists that a jury might have reached a verdict of murder . . . on the basis of a felony-murder theory, a consecutive sentence may not be imposed for the underlying felony." *Commonwealth* v. *Wilson*, 381 Mass. 90, 124 (1980). Even where the sentence imposed runs concurrently, the conviction on the underlying felony is duplicative and must be set aside. *Commonwealth* v. *Jones*, 382 Mass. 387, 395-396 (1981). The appropriate remedy for the imposition of duplicative convictions is to vacate both the conviction and sentence on the lesser included offense, and to affirm the conviction on the more serious offense. *Commonwealth* v. *Crocker*, 384 Mass. 353, 358 n.6 (1981). Because the jury may have convicted the defendant of second degree murder on a theory of felony-murder, the conviction on the underlying felony, arson, is duplicative.

Accordingly, the case is remanded to the Superior Court. The judgment on the arson conviction is to be vacated and the remaining convictions are affirmed. The order denying the defendant's motion for new trial is affirmed.

*So ordered.*

O'CONNOR, J. (dissenting). The court holds that the record adequately shows that, before admitting the defendant's confessions in evidence, the judge found beyond a reasonable doubt that the confessions were voluntary. I disagree.

"It frequently happens that a ruling on evidence re-
quires the determination of a preliminary question of
fact . . . . With respect to certain preliminary facts, es-
pecially in criminal cases, it is the practice for the
judge, after finding the facts, to instruct the jurors to
disregard the evidence if they do not believe that the
preliminary facts exist. Where the voluntariness of a
confession is in issue, for example, the accused is enti-
tled according to the so-called 'humane practice' to a
voir dire examination in the absence of the jury, and the
confession may not be admitted unless the judge makes
an affirmative finding of voluntariness. . . . Other situ-
ations in which the determination of a preliminary ques-
tion is similarly shared between judge and jury include
the following: the question of whether the requirements
for a dying declaration have been established [see *Com-
monwealth* v. *Key*, 381 Mass. 19, 22 (1980); *Common-
wealth* v. *Polian*, 288 Mass. 494, 497-498 (1934); and
Proposed Mass. R. Evid. 104 (f)]; the question of
whether in a criminal case the foundational require-
ments for admission of a document as a business record
have been met (see G. L. c. 233, § 78); and the question
of whether a document is in the handwriting of a partic-
ular person [see *Commonwealth* v. *Tucker*, 189 Mass.
457, 471 (1905)]. Unlike the 'reasonable doubt' stan-
dard of proof regarding confessions . . ., a 'preponder-
ance of the evidence' is apparently sufficient to warrant
admission and consideration of the evidence in these sit-
uations. *Commonwealth* v. *Polian*, *supra*, 288 Mass. at
498-499 . . . (explicitly rejecting the 'reasonable doubt'
standard); *Commonwealth* v. *Key*, *supra*, 381 Mass. at
25. The jury, of course, has no role to play unless the
judge has made an affirmative finding that the evidence
is admissible. . . . In the absence of an express finding
of preliminary facts, the appellate court will make the
following inference[ ]: . . . If the evidence is admitted,
it will be inferred from the admission that the necessary
preliminary findings were made . . . . A preliminary

finding by the judge that a confession of a criminal defendant was voluntary beyond a reasonable doubt must, however, appear from the record with 'unmistakable clarity.' See § 9.1."

P.J. Liacos, Massachusetts Evidence § 3.9.1, at 97-100 (6th ed. 1994).

Section 9.1 of P.J. Liacos, Massachusetts Evidence, at 534-536, contains the following relevant statements.

"Under the so-called humane practice followed in the commonwealth for many years . . . a confession may be admitted in evidence only after a preliminary hearing in the absence of the jury and a determination of its voluntariness. . . . If the judge determines that the confession was voluntary and admits it, the jury is instructed that they are not to consider the confession unless satisfied that it was the voluntary act of the defendant. . . . If the judge concludes that the defendant's statement was voluntary beyond a reasonable doubt, that conclusion must appear with unmistakable clarity from the record."

In *Commonwealth* v. *Tavares*, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982), reasoning that "[u]nder our 'humane practice' the initial screening by the judge is the 'basic determination safeguarding the accused,' " this court

"conclude[d] that before any statement by a defendant to law enforcement officers or their agents may be placed before the jury, the Commonwealth must prove voluntariness beyond a reasonable doubt. If the judge concludes that the defendant's statements are voluntary beyond a reasonable doubt, that conclusion 'must appear from the record with unmistakable clarity.' *Sims* v. *Georgia*, 385 U.S. 538, 544 (1967). *Commonwealth* v. *Harris*, 371 Mass. 462, 472 n.4 (1976). *Eisen* v. *Picard*, 452 F.2d 860, 863 (1st Cir. 1971) [cert. denied, 406 U.S. 950 (1972)]." [Footnote omitted.]

"Before our decision in *Tavares,* the Commonwealth was required to prove voluntariness only by a preponderance of the evidence. *Commonwealth* v. *Fournier,* 372 Mass. 346, 349 (1977). *Commonwealth* v. *Mahnke,* 368 Mass. 662, 680 (1975), cert. denied, 425 U.S. 959 (1976). While the Federal constitutional concern for due process requires only that a defendant's confession be proved voluntary by a preponderance of the evidence, *Lego* v. *Twomey,* 404 U.S. 477 (1972), *Tavares* established that Massachusetts' long-standing humane practice requires that both admissions and confessions be proved voluntary beyond a reasonable doubt. *Tavares, supra* at 152."

*Commonwealth* v. *Dyke,* 394 Mass. 32, 36 (1985).

Thus, in 1982, in *Tavares,* the court created an exception, limited to defendants' statements in criminal cases, to the general rule that in all cases, civil and criminal, the judge's findings of preliminary facts on which the admissibility of evidence depends need only be by a fair preponderance of the evidence. That general rule, except as to the voluntariness of defendants' statements in criminal cases, is the law in Massachusetts to the present. That general rule, without such an exception, is still the Federal rule. *Bourjaily* v. *United States,* 483 U.S. 171, 175 (1987).

The majority states, *ante* at 382: "The judge concluded, and expressly ruled on the record, that he had found the defendant's confession voluntary, thereby rejecting the defendant's claims that the confessions were involuntary because of intoxication." My review of the record has not uncovered the express finding, ruling or disclosure to which the court refers. In any event, no one, including this court, suggests that the judge expressly stated that he had found the confessions voluntary *beyond a reasonable doubt.* Instead, the court simply rejects "the defendant's assertion that the judge may not have reached the determination 'beyond a reasonable doubt.' " *Ante* at 382. The court says, "The judge submitted the issue of voluntariness to the jury, as he was required to

do, under comprehensive instructions of law that indicated his awareness of the proper standard of proof. It makes no sense to think that the judge knew the standard which governed the jury's determination of voluntariness, but may not have apprehended that the same standard applied to his decision on the motion to suppress." *Ante* at 382-383. The court "conclude[s] that the record is satisfactory on the point of the necessary preliminary ruling." *Ante* at 383.

In denying the defendant's motion to suppress his confessions as not having been voluntary and in admitting the confessions, did the judge assume that the burden of proof on the preliminary question of voluntariness, the question being directed to him, was only by a fair preponderance of the evidence as it is in the Federal courts even though ultimately the burden of proving voluntariness to the jury calls for proof beyond a reasonable doubt? Was the judge aware that in the courts of the Commonwealth the general rule has been, and continues to be, that the burden of proof as to preliminary questions of fact on which the admissibility of evidence depends in both civil and criminal cases is by a fair preponderance of the evidence? Was the judge in any event not aware that this court in *Tavares* had created an exception to the general rule that was critical to this case? How can this court know what the judge's understanding was in this regard?

In *Tavares*, the court sought to avoid such crucial uncertainties in future criminal appeals by requiring that a judge's finding of voluntariness beyond a reasonable doubt be clearly demonstrated by the record. *Id.* at 152. See *Commonwealth* v. *Fernette*, 398 Mass. 658, 663 (1986) ("If the judge finds that the defendant's statement is voluntary beyond a reasonable doubt, 'that conclusion "must appear from the record with unmistakable clarity." ' *Commonwealth* v. *Tavares*, *supra* at 153, quoting *Sims* v. *Georgia*, 385 U.S. 538, 544 [1967]"). It cannot reasonably and fairly be said in this case that the record shows with unmistakable clarity that the judge found the defendant's confessions to have been voluntary beyond a reasonable doubt. On the contrary, the record

is entirely silent with respect to what standard of proof the judge applied in finding, as a preliminary matter, that the proffered statements were voluntary. My view, contrary to that of the court, is that it *does* make sense to recognize that, although the judge knew the standard that governed the jury's determination of voluntariness and properly instructed them as to that, he may not have known the standard by which his preliminary determination was governed in the limited situation presented by this case. The judge may well have mistakenly thought that the general rule applied.

In my view, the court's conclusion that "the record is satisfactory on the point of the necessary preliminary ruling," *ante* at 383, is an unwarranted, inappropriate departure from the "humane practice" wisely promoted in *Tavares* and followed in numerous cases since *Tavares*.