Commonwealth *vs.* Joseph A. Cote, Jr., & another.[1]

Barnstable.    March 16, 1977. — May 26, 1977.

Present: Hale, C.J., Goodman, & Grant, JJ.

*Practice, Criminal,* Directed verdict, Charge to jury.  *Evidence,* Hearsay, Exhibit.

At the trial of indictments for breaking and entering in the nighttime with intent to commit larceny, circumstantial evidence warranted the conclusion that both defendants were guilty. [368-369]

At the trial of two defendants on charges of breaking and entering in the nighttime with intent to commit larceny, the judge's charge to the jury that they could find each of the defendants guilty or each not guilty, but that "it [was] inconceivable that [they] could find one of the defendants guilty and one not guilty," was error where the evidence was not the same against both defendants. [369-370]

At a criminal trial it was permissible to allow a witness to refer to a booklet containing certain store identification numbers where the witness's testimony concerning one store's identification number was based on his personal knowledge and he used the booklet merely to refresh his memory. [370-371]

At the trial of two defendants on charges of breaking and entering a supermarket in the nighttime with intent to commit larceny, there was no error in admitting in evidence a cigarette carton end flap found in a truck rented by one of the defendants which bore a marking identified as the supermarket's identification number. [371]

At a criminal trial there was no error in allowing a police officer to testify to certain license and serial numbers recorded and given to him by another witness. [371-372]

Indictments found and returned in the Superior Court on March 18, 1976.

The cases were tried before *Beaudreau,* J.

*Joseph S. Callahan* for the defendants.

*Philip A. Rollins,* District Attorney (*James J. Higgins,* Assistant District Attorney, with him) for the Commonwealth.

---

[1] David A. Hutchins.

HALE, C.J. On the night of January 17, 1976, the Chatham store of the Stop and Shop Companies, Inc., was burglarized. The defendants were tried and convicted under separate indictments charging them with breaking and entering in the nighttime with intent to commit larceny (G. L. c. 266, § 16). From the evidence the jury could have found the following. On Saturday night, January 17, 1976, the head of the cash department of the Chatham store, John Arbogast, left the store at 10:30 P.M. after supervising the cleaning crew. At that time the store had just been cleaned, and the building was secure with all the doors locked. There was nothing unusual or out of place in the building. The burglary was not discovered until the night of Sunday, January 18, when the assistant manager, William Dawson, arrived at the store about midnight. He discovered the break and notified the Chatham police. An investigation by the police revealed that the store had been entered through a ventilation duct in the roof which led to an equipment room. The wall between the equipment room and the main area of the store had been broken through. The police found in the store a damaged jack (used for transporting heavy items), footprints, and drag marks on the previously clean floor. They also discovered a disconnected time clock which, when plugged in and a card punched into it, read Saturday, 11:45 P.M., indicating the approximate time of the break. A 3,000 pound safe was missing; the cigarette room had been broken into, and several cases of cartons of cigarettes had been stolen; the burglar alarm had been bypassed by means of a six-volt battery connected to the wiring of the alarm system, and the grocery receiving door lock had been broken.

At approximately 11:30 P.M. on the night of January 17 a blue Lincoln Continental Mark IV with two antennae was seen by Carl and Alice Fritz in the parking lot of a restaurant and lounge across the street from the Stop and Shop. As they walked the quarter mile from the parking lot of the lounge past the Stop and Shop to the street on which they lived, the blue Lincoln passed them three

times. They could not clearly see the driver, nor did they notice the license number of the car. The next morning, Sunday, January 18, a car of the same description was seen by the manager and a bartender of the lounge in the lounge parking lot sometime between 10:50 A.M. and noon. Also present in the lot at the same time was a U-Haul truck with Michigan license plates. The car and truck left the lounge parking lot together and entered the Stop and Shop parking lot.

Later Sunday afternoon Mr. and Mrs. Fritz again saw the blue Continental on a local road not far from the Stop and Shop. A U-Haul truck was not far from the Continental. Neither noted the license number of either vehicle, but Mrs. Fritz identified the defendant Cote as the driver of the U-Haul truck. Neither could identify the driver of the Continental.

One Boheen of Fall River, a former police officer, testified that a U-Haul truck with out-of-State license plates had been parked in front of his house for three days in January. He could not remember the dates, but he had notified the police, who came to his house on January 21 to investigate. By the time the police arrived at Boheen's house on January 21, the truck had been removed. Boheen gave them a paper on which he had written the license plate number as well as the serial number of the truck. A truck with the same Michigan license number and serial number was later located at a gas station in Falmouth. The truck had been returned to the gas station on January 21 and the rental charge paid by the defendant Cote. While Cote was returning the truck and paying the rental charge a blue Lincoln Continental Mark IV with two antennae was on the gas station premises. The defendant Hutchins was identified as the driver of the Continental.

Upon examination of the interior of the truck the police discovered the end flap of a carton of cigarettes with a number stamped on it which was later identified by the manager of the Chatham Stop and Shop as his store's identification number. They also noted that there were gouge marks in the wooden deck of the truck which were

32 inches apart. The truck had been rented on January 18, and the recorded mileage during the rental period was 177 miles. The police later found in a reservoir in Fall River the safe which had been stolen from the Stop and Shop. It was found that the safe, which had been opened, measured 31 3/4 inches across, one-quarter inch less than the space between the gouge marks noted in the truck. The police then clocked the distance from the place where the truck had been rented in Falmouth, to the Stop and Shop in Chatham, to the reservoir in Fall River, and then back to Falmouth, and found that the mileage for that trip was 172 miles.

We deem to be without merit any assignments not discussed below.

1. The defendants assign as error the denial of their motions for directed verdicts. The sole question raised by a motion for directed verdict is "whether there was sufficient evidence of the defendant's guilt to warrant the submission of the [case] to a jury." *Commonwealth* v. *Baron,* 356 Mass. 362, 365 (1969). *Commonwealth* v. *Fillippini,* 1 Mass. App. Ct. 606, 612 (1973). The standard of review of that question on appeal is whether the evidence, read in its aspect most favorable to the Commonwealth, *Commonwealth* v. *Flynn,* 362 Mass. 455, 479 (1972), is such that the jury "might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt." *Commonwealth* v. *Vellucci,* 284 Mass. 443, 445 (1933). *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 786 (1975). In this case there was no direct evidence that either defendant had committed the crime charged. " 'The true rule of law respecting the probative character of circumstantial evidence is well settled. It is that the circumstances must be such as to produce a moral certainty of guilt, and to exclude any other reasonable hypothesis; that the circumstances taken together should be of a conclusive nature and tendency, leading on the whole to a satisfactory con-

clusion, and producing, in effect, a reasonable and moral certainty, that the accused, and no one else, committed the offense charged. . . .' *Commonwealth* v. *Russ*, 232 Mass. 58, 68 [1919]." *Commonwealth* v. *Shea*, 324 Mass. 710, 713 (1949). In our opinion the evidence presented to the jury, together with permissible inferences that could be drawn therefrom, was sufficient to warrant their conclusion that both defendants were guilty of the crime charged.

2. During the course of his instructions to the jury the judge made the following statement: "So, you can conceivably find each of these defendants not guilty or the jury could find each of the defendants guilty, one of the two. . . . [I]t is inconceivable that you could find one of the defendants guilty and one not guilty. They are either not guilty or guilty on the evidence that came in in this case." Although no exception was taken to the charge we may nevertheless consider its propriety in order to insure that it does not result in a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). *Commonwealth* v. *Perry*, 3 Mass. App. Ct. 308, 311 (1975). The defendants claim that the judge's statement constituted prejudicial error and requires reversal.

"While a judge is afforded wide discretion in phrasing his instruction to the jury, he must heed certain limitations which the law places upon the exercise of his discretion. For example, G. L. c. 231, § 81, states, 'The courts shall not charge juries with respect to matters of fact, but they may state the testimony and the law.' See *Commonwealth* v. *Myers*, 356 Mass. 343, 349 (1969)." *Commonwealth* v. *Perry*, *supra* at 785. It is thus improper for a judge to include in his instruction to the jury his opinion about the credibility of certain witnesses, *Commonwealth* v. *Barry*, 9 Allen 276, 277-279 (1864), or to direct what inferences the jury should draw from certain evidence. *Commonwealth* v. *Borges*, 2 Mass. App. Ct. 869 (1974).

In the instant case, the instruction given amounted to a usurpation of the fact-finding function of the jury. The evidence in this case was not the same against both defendants. Hutchins had not been identified until the truck

Commonwealth *v.* Cote.

was returned to Falmouth, while Cote had been identified as the driver of the truck in Chatham and Falmouth. In expressing his belief that both defendants must be found either guilty or not guilty, the judge in effect informed the jury that if they were satisfied of the identity of one defendant they must also be satisfied of the identity of the other, and that the evidence presented compelled a finding that both defendants, whatever they were doing, were acting in concert. Determining whether such inferences should be drawn was clearly the function of the jury. "Certainly the court in all cases should be scrupulously careful not to invade the province of the jury by undertaking to decide on the weight or effect of evidence, or by refusing to submit to their consideration any question of fact, material to the issue, which may be in dispute. . . ." *Gavett* v. *Manchester & Lawrence R.R.* 16 Gray 501, 505 (1860). It is true, as the Commonwealth argues, that the instruction would not have prevented the jury from acquitting both defendants if they had had a reasonable doubt concerning the guilt of either of them. However, in this case the possibility of the defendant Hutchins, who had not been identified in Chatham, being found guilty on the basis of evidence which supported a guilty verdict against Cote, is substantial and the risk of a miscarriage of justice great. The instruction as given here was error, and the judgment against Hutchins must be reversed. We do not regard the risk of a miscarriage of justice as to Cote to be substantial, and do not consider his case an appropriate one in which to exercise the rarely used power invoked in *Commonwealth* v. *Freeman, supra.* Contrast *Commonwealth* v. *Nelson,* 3 Mass. App. Ct. 90, 101 (1975), *S.C.* 370 Mass. 192, 194-195 (1976).

3. As other issues raised may arise at the retrial of Hutchins' case, we respond to certain of the remaining, unwaived assignments of error.

A. The store manager of the Chatham Stop and Shop testified that the partially obliterated number stamped on a cigarette carton end flap found in the back of the U-Haul truck was the identification number of the Chatham Stop

and Shop. When asked whether the number could be that of another Stop and Shop in Massachusetts, he testified that he was familiar with most of the other numbers and was then permitted to refer to a booklet containing a list of store identification numbers and to testify that there was no other store with a number similar to that of the Chatham store from which the cigarette carton end flap might have come. The defendants claim that the testimony that there was no store in Massachusetts with a similar number, based as it was on the witness' use of the booklet, was hearsay and should have been excluded. But the witness was testifying from his personal knowledge of Stop and Shop code numbers and appears to have used the booklet merely to refresh his memory. As such, his use of the booklet was permissible.

B. The carton end flap was later admitted in evidence over the objection of the defendants that there was no evidence tying the end flap found either to the stolen cigarettes or to the defendants, and further that the markings on the flap were so indistinct as to have no probative value. But the evidence that the end flap was found in the back of the U-Haul truck was offered and was relevant to the question whether the truck shown to have been rented by one of the defendants had been used in the course of the burglary. Whether the marking on the flap was too indistinct to be of any value went to the weight of the evidence, not to its admissibility, as that marking had been identified earlier by the Chatham Stop and Shop manager as his store's identification number.

C. Boheen testified for the Commonwealth that he had seen an out-of-State U-Haul truck parked in front of his house for three days in January. He had called the police and written down the license and serial numbers of the truck. At the time of trial he could not remember either number but testified that he had given the paper on which they were written to the police. Police officer Fleslane then testified. He was asked whether he had been given the license and serial numbers by Boheen. The defendants objected, but the witness was allowed to answer and did

so in the affirmative. He was then asked what the numbers were, and he repeated them. There was no objection. On appeal the defendants claim that that testimony was hearsay and should have been excluded. We do not regard the question to be properly before us; no objection was made to the introduction of the license and registration numbers but only to the preliminary question to the police officer concerning whether he had received such information. *Commonwealth* v. *Myers*, 356 Mass. 343, 346 (1969). Had an objection been made at the appropriate time on the ground now argued, the same evidence could properly have been admitted as past recollection recorded through Boheen or Fleslane. *Fisher* v. *Swartz*, 333 Mass. 265, 267-270 (1955). Leach & Liacos, Massachusetts Evidence 83 (4th ed. 1967). McCormick, Evidence § 303 (2d ed. 1972).

The judgment on indictment 36131 (Cote) is affirmed. The judgment on indictment 36132 (Hutchins) is reversed, and the verdict on that indictment is set aside.

*So ordered.*