## Commonwealth *vs.* Frank C. Young, Jr.

No. 00-P-639.

Barnstable. May 14, 2001. - September 23, 2002.

Present: Perretta, Beck, & Berry, JJ.

*Homicide. Malice. Practice, Criminal,* New trial, Instructions to jury, Appeal. *Evidence,* Self-defense, Joint enterprise. *Self-Defense. Joint Enterprise.*

In a murder case, the judge's third prong malice instruction to the jury, which included reference to grievous bodily harm, was not error requiring reversal where, from the evidence presented, the jury could have been ineluctably drawn to a finding of a plain and strong likelihood that death (and not merely harm or injury) would flow from the acts of the defendant and his joint venturer in executing "a mission" to get the victim with the guns they both were carrying. [62-65]

The defendant in a murder case was not entitled to a self-defense instruction on nondeadly force in self-defense, given that the defendant and his joint venturer responded to perceived threats from the victim, carrying a broom handle, with nothing less than deadly force. [65-66]

In a murder case, the judge's supplemental instruction to the jury on joint venture did not foreclose the prospect of a lesser verdict being returned against the defendant than against his joint venturer. [66-69]

Indictments found and returned in the Superior Court Department on August 20, 1990.

Following review by this court, 35 Mass. App. Ct. 427 (1993), a motion for a new trial, filed on October 22, 1999, was heard by *Gerald F. O'Neill, Jr.,* J.

*Ruth Greenberg* for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

Berry, J. In 1991, the defendant, Frank C. Young, Jr. (defendant or Frank), and his brother, Dion Young (Dion), were convicted by a jury of unlawful possession of a firearm and of second degree murder arising out of a confrontation with, and the shooting of, an antagonist. The convictions were affirmed,

and further appellate review was denied. *Commonwealth* v. *Young*, 35 Mass. App. Ct. 427, *S.C.*, 416 Mass. 1108 (1993) (*Young I*).[1,2] The defendant then filed a Federal habeas corpus petition, which was denied in 1996. See Young *vs.* Duval, U.S. Dist. Ct., Civ. A. No. 95-10549 (D. Mass. 1996). Three years later, in 1999, the defendant filed a motion for a new trial raising three claims: (1) that the third prong malice instruction, which included reference to "grievous bodily harm" was error, as determined in *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 395 (1998); (2) that the self-defense instruction was improperly limited to a deadly force description and omitted language that self-defense may also be effected by nondeadly force; and (3) that the supplemental instruction on joint venture, in effect, compelled the conviction of Frank for the same crime as Dion, and thereby deprived Frank of the chance of conviction of a lesser offense. The new trial motion was denied, and this appeal followed.

1. *The new trial motion and the issue of waiver.* The three issues advanced by the defendant in the new trial motion were not raised in the direct appeal in *Young I*. "[T]he long-standing rule that issues not raised at trial or pursued in available appellate proceedings are treated as waived [is subject to the] trial judge's discretionary power to give relief from such a waiver . . . in those extraordinary cases where, upon sober reflection,

---

[1] The direct appeal involved consolidated review of the appellate claims of Frank and Dion.

[2] A detailed statement of the facts is set forth in *Commonwealth* v. *Young*, 35 Mass. App. Ct. 427, 429-433 (1993) (*Young I*). As background to the issues raised in this second appeal from the denial of a motion for a new trial, the following brief summary provides the relevant information. Frank and Dion planned to attend a party. The victim, Anthony Edwards, was also going to the party. Two weeks before the party, there had been an altercation, assault, and threats of violence between the two brothers and Edwards. Shortly thereafter, the defendant and his brother obtained handguns to bring to the party. Each brother knew the other was in possession of a weapon. At the party, Edwards taunted the defendant and approached him with a mop handle. Edwards swung the stick, but missed the defendant. At that point, Dion stepped in front of the defendant and shot Edwards. Both brothers then ran from the scene, and the defendant hid the two guns in a nearby vacant truck. When arrested, both brothers gave incriminating statements. In his statement, the defendant acknowledged that, after Edwards tried to hit him with the stick, the defendant reached into his back pocket and drew his weapon. He later stated that he fired the gun, but missed Edwards.

it appears that a miscarriage of justice might otherwise result." *Commonwealth* v. *Curtis*, 417 Mass. 619, 626 (1994). In addition to invoking this exception in circumvention to the bar of waiver, the defendant also claimed in the new trial motion that his trial counsel was ineffective in not preserving objections at trial and his appellate counsel was similarly ineffective in failing to perceive and raise these three issues in the direct appeal.[3] However, whether "[t]he issue . . . come[s] before an appellate court [directly as nonpreserved error, or] indirectly . . . [by] a new trial motion [claiming] that prior counsel was ineffective in a constitutional sense, either in not preserving the issue at trial or in not arguing it on appeal, or both," the same miscarriage of justice standard governs. *Commonwealth* v. *Curtis*, *supra* at 624 n.4. This follows because, "if an omission of counsel does not present a substantial risk of a miscarriage of justice . . . there is no basis for an ineffective assistance of counsel claim under either the Federal or the State Constitution." *Ibid.* Accordingly, we review to determine whether there was error giving rise to a substantial risk of a miscarriage of justice. We conclude there was not, and affirm.

2. *The third prong malice error.* In the aftermath of the 1998 decision in *Vizcarrondo*, which held erroneous a third prong malice instruction that included reference to inflicting grievous bodily harm, there have been a series of appellate challenges by collateral review in new trial motions, as in this case, involving the same flaw in the third prong malice instruction. These underlying trials all occurred in the twilight period before *Vizcarrondo* during which there was conflicting precedent suggesting that inclusion of the grievous bodily injury language in a third prong malice charge was acceptable — a construction later soundly rejected in *Vizcarrondo*. Appellate review has focused on whether the erroneous third prong malice instruction "created a risk that the jury would find the presence of malice, and therefore a risk that they would find murder, on mere proof of a plain and strong likelihood of grievous bodily harm." *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002).

---

[3]The record contains an affidavit from appellate counsel stating that had he realized the errors asserted in the new trial motion, he would have advanced them in the direct appeal and that the omission of the issues was not a strategic decision.

To determine whether a particular case with a faulty third prong malice instruction posed the risk of an unsupportable murder conviction, the Supreme Judicial Court, in *Azar*, directed that appellate review "consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision. . . . [T]his standard is particularly well suited to a situation, such as [presented by the incorrect third prong malice instruction], where the elements of a crime are erroneously stated in the jury charge." *Ibid.* With this standard as backdrop, there emerges a clear demarcation between cases where the Supreme Judicial Court has determined that:

> "The same error [in the inclusion of grievous bodily harm in the third prong malice instruction] has required reversals and new trials in some cases. See *Commonwealth* v. *Williams*, 428 Mass. 383 (1998); *Commonwealth* v. *Vizcarrondo, supra*; *Commonwealth* v. *Pichardo*, 45 Mass. App. Ct. 296 (1998); *Commonwealth* v. *DiRenzo*, 44 Mass. App. Ct. 95 (1997). [This is in contrast to] other cases [where] it has not been necessary to order new trials because the evidence in the cases did not warrant a finding of a risk of harm less than a plain and strong likelihood of death."

*Ibid.* The common characteristics of the latter class of cases deemed not to warrant reversal have

> "involved the use of an inherently dangerous weapon, such as a gun, knife, or explosive device, or clear evidence of a prolonged and calculated assault. See, e.g., *Commonwealth* v. *Freeman*, 430 Mass. 111, 123 (1999); *Commonwealth* v. *Murphy*, 426 Mass. 395, 401 (1998); *Commonwealth* v. *Fryar*, 425 Mass. 237, 248, cert. denied, 522 U.S. 1033 (1997); *Commonwealth* v. *Mello*, 420 Mass. 375, 390 (1995); *Commonwealth* v. *Niland*, 45 Mass. App. Ct. 526, 532 (1998); *Commonwealth* v. *Caines*, 41 Mass. App. Ct. 812, 816-817 (1996)."[4]

*Id.* at 688.

---

[4]These cases with an erroneous third prong malice instruction held not to require reversal and a new trial all involved extreme acts of violence and

Thus, in synthesizing the disparate results — between instances in which new trials were granted versus those in which new trials were denied — the outcome-determinative issue, in the main, rests on whether "the presence of malice, as it is correctly understood, can be 'ineluctably inferred' from the evidence. *Commonwealth* v. *Vizcarrondo, supra* at 397. The question is whether the evidence required the jurors to find a plain and strong likelihood that death would follow from the defendant's acts." *Commonwealth* v. *Azar*, 435 Mass. at 688. The turning point "lies in the degree of risk of physical harm that a reasonable person would recognize was created by particular conduct, based on what the defendant knew.[5] [F]or the purposes of the third prong of malice [the evidence must support] that there was a plain and strong *likelihood of death*." *Commonwealth* v. *Vizcarrondo, supra* at 396, quoting from *Commonwealth* v. *Sires*, 413 Mass. 292, 303-304 n.14 (1992) (emphasis supplied). Conversely, the evidence presented must not be such that a jury could have inferred malice from conduct involving "a high degree of likelihood that substantial harm will result to another." *Ibid.* Most simply stated, reversal was not warranted where the evidence plainly and strongly presented the likelihood of death; reversal was warranted where the evidence did not so establish the likelihood of death, but rather suggested the likelihood that grievous or substantial bodily harm might be the result of the defendant's acts.

In our view, the instant case falls within that class of cases where reversal is not warranted because from the evidence, the

dangerous instrumentalities. In *Commonwealth* v. *Mello*, 420 Mass. 375, 390 (1995), the defendant set an apartment building full of sleeping occupants ablaze by throwing a "Molotov cocktail" onto the porch; in *Commonwealth* v. *Fryar*, 425 Mass. 237, 248, cert. denied, 522 U.S. 1033 (1997), the defendant stabbed the victim in the chest; in *Commonwealth* v. *Murphy*, 426 Mass. 395, 401 (1998), the defendant delivered multiple stab wounds and also attacked with a blunt instrument; in *Commonwealth* v. *Freeman*, 430 Mass. 111, 123 (1999), the defendant stabbed the victim twenty-three times; in *Commonwealth* v. *Niland*, 45 Mass. App. Ct. 526, 532 (1998), the defendant shot the victim in the head at point blank range; and in *Commonwealth* v. *Caines*, 41 Mass. App. Ct. 812, 816-817 (1996), the defendant strangled the victim both manually and with a ligature.

[5]This addresses the subjective component of third prong malice. See *Commonwealth* v. *Grey*, 399 Mass. 469, 472 n.4 (1987); *Commonwealth* v. *Mello*, 420 Mass. at 389-390. That subjective component is not at issue here.

jury would be ineluctably drawn to a finding of a plain and strong likelihood that *death* (and not merely harm or injury) would flow from the acts of Frank and his joint venturer Dion in executing, to use Frank's words, "a mission," *Young I*, 35 Mass. App. Ct. at 433, to get the victim with the guns they both were carrying. The evidence of malice tied to a plain and strong likelihood of death was ineluctably inferable from the following: the prior attack in which Frank, assaulting Edwards from behind, "struck him on the head with a plank of wood, bringing him to the ground," *Young I, supra* at 429; the threat of further revenge delivered at this first assault, which Dion directed to Edwards, and which Frank heard, that "[n]ext time it's going to be bullets," *ibid.*; the carefully laid plans of both brothers to arm themselves with the handguns for the next anticipated encounter with Edwards at the party — plans which included not only the procurement of two guns, a .22 caliber for Dion and a .25 caliber for Frank, but also encompassed the finite detail of cleaning the guns, test-firing them and buying ammunition, *ibid.*; and the defendant's incriminating statement that reflected an intent to exact revenge. *Id.* at 433. The actual shooting was at point blank range, inflicting a wound that kills in seconds or minutes. See generally the description of the shooting and the injuries in *Young I, supra* at 431. So amassed, the evidence refutes anything other than a strong likelihood of death.

In the first appeal, this court concluded that "[t]hese events amply supported the jury's finding of malice." *Young I,* 35 Mass. App. Ct. at 434. In reviewing the evidence as a whole against the background of the erroneous third prong malice instruction, that determination remains accurate. "A new trial will be ordered only in the extraordinary situation where, after such a review, we are left with uncertainty that the defendant's guilt has been fairly adjudicated." *Commonwealth* v. *Chase*, 433 Mass. 293, 299 (2001) (omitting citation). This is not such a case.

3. *The self-defense instruction.* The defendant claims that the self-defense instruction incorrectly omitted reference to the potential use of nondeadly force in self-defense. In the first place, the defendant's proposed self-defense instruction did not

request inclusion of nondeadly force. We note that the self-defense instruction, as given, was virtually identical to the proposed instructions submitted by the defendant at trial. Moreover, the jury charge correctly stated the applicable law of self-defense.[6] Finally, the evidence did not support a nondeadly force instruction. The defendant's joint venturer brother had a gun and used it to shoot a man wielding a stick, and the defendant was secretly carrying a .25 caliber gun to be used in any encounter with the victim. Further, the defendant bragged that, although his brother Dion shot the victim first, the defendant had reached for his own gun and "offed the trigger." *Young I, supra* at 432. Given that the defendant (and his brother) responded to perceived threats from the victim, carrying a broom handle, with nothing less than deadly force, they were not entitled to an instruction on nondeadly force in self-defense. See and compare *Commonwealth v. Baseler*, 419 Mass. 500, 503 (1995) (right to use nondeadly force arises at a lower level of danger than the right to use a dangerous weapon); *Commonwealth v. Cataldo*, 423 Mass. 318, 321-326 (1996) (where a defendant brandishes a gun, but does not use it in its intended deadly manner, jury must determine if defendant intended to use the weapon in such an intended deadly manner).

4. *The joint venture issue.* The defendant contends that he was not engaged in a joint venture and argues that the supplemental joint venture instruction compelled his conviction for the same offense as Dion, depriving him of the prospect of a lesser conviction. The first issue of the defendant participating in a joint venture was decided adversely to him in his direct appeal. See *Young I, supra* at 435-437. "The defendant now attempts to use the same factual circumstances which gave rise to his unsuccessful argument in the Appeals Court [in *Young I*] in fashioning a new argument which he previously could have

---

[6]As was noted in *Young I*, the judge's charge included "a thorough and detailed discussion of self-defense and defense of another, pointing out the distinction between justification and mitigation (but without resorting excessively to that terminology), as well as the Commonwealth's burden to prove beyond a reasonable doubt that Dion did not act in self-defense or in defense of his brother, or, alternatively, that Dion used excessive force in response to the provocation which, if proven by the Commonwealth, would constitute manslaughter." *Id.* at 439.

made on direct appeal. This he may not do." *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 566 n.2 (1994), cert. denied, 513 U.S. 1091 (1995). In *Young I*, this court reviewed in detail the evidence proving a joint venture and concluded that there was sufficient evidence "for the jury to find beyond a reasonable doubt that Dion intentionally used a deadly weapon and that he shot [Edwards] without legal justification or palliation. . . . . The evidence permitted the jury to find that Frank was much more than a bystander . . . . Frank and Dion each knew that the other was carrying a weapon at the party. As it happened, Dion's weapon was the instrument of the murder, but it was equally likely that Frank's gun was to be the murder weapon. . . . [T]he jury could determine that Frank and Dion were each responsible for the acts of the other." *Young I*, 35 Mass. App. Ct. at 433, 435-437 (footnote omitted).[7]

In a newly advanced attack relating to the joint venture, the defendant contends that the judge's supplemental instruction given in response to a jury question on joint venture[8] virtually made "mandatory" his conviction for the same offense as his brother, who was the actual shooter and was, therefore, erroneous. Frank contends that even if Dion were guilty of murder, Frank, at worst, was guilty only of manslaughter. There was no objection. We review to determine whether there was error, and, if so, whether the error posed a substantial risk of a miscarriage of justice. See Part 1, *supra.* We discern no error.

In response to the jury inquiry, the judge in the supplemental instruction provided a lengthy and comprehensive restatement of the law of joint venture, which, in the main, tracked the original charge. The judge repeated the elements of a joint venture and emphasized that the jury must find that the defendant shared the intent required to commit the crime, that there must be proof that the defendant intentionally participated

[7]The Federal court also denied the defendant's habeas corpus petition based, inter alia, on challenges to the evidentiary basis of the joint venture and whether the defendant manifested the requisite state of mind to have been found a participant in the joint venture with Dion. See Young *vs.* Duval, U.S. Dist. Ct., Civ. A. No. 95-10549 (D. Mass. 1996).

[8]The jury's question was: "Joint venture . . . If individual No. 1 is determined guilty of the charge, then does individual No. 2 if determined guilty have to be found guilty of exactly the same charge?"

in committing the crime, that the defendant's mere presence at the crime scene was not sufficient, and that active participation in furtherance of the criminal enterprise was required. Both the original and supplemental instruction were a correct formulation of the law of joint venture.[9]

The defendant claims that the judge erred because the instruction stated that, if the jury found the defendants engaged in a joint venture, both of the joint venturers would be guilty of the same crime.[10] The defendant suggests this compelled his conviction for second degree murder if Dion was found guilty of that offence by the jury. This interpretation of the supplemental instruction does not hold. The judge clearly articulated that differing verdicts could be returned against Dion and Frank, depending or whether the jury found that there was a joint venture. "If you find that it's not a joint venture, you may find the first person guilty of the commission of a crime and the second person guilty of another crime or not guilty of any crime. If you don't find a joint venture, you can find them guilty of different crimes, but not under the theory of joint venture." At another point, he emphasized again that the jury was free to "find [the two defendants] guilty of two different charges. . . . If you don't find a joint venture, what one person did does not burden the second person by a theory of joint

---

[9]Joint venture may be found where the defendant (i) was present at the scene of the crime, (ii) with knowledge that another intended to commit the crime, or with intent to commit the crime, and (iii) acted in aid and assistance to the crime or by agreement was willing and available to render such assistance to the other if necessary. See generally *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). The prosecution must show that the defendant shared the mental state required for the crime charged. *Id.* at 486-487. On indictments charging murder, as in this case, "[a] joint venturer need only intend that the victim be killed or know that there is a substantial likelihood of the victim's being killed." *Commonwealth* v. *Podlaski*, 377 Mass. 339, 347 (1979).

[10]The defendant cites *Commonwealth* v. *Cote*, 5 Mass. App. Ct. 365 (1977), as the principal support for the novel proposition that, under the law of joint venture, it is error to instruct that joint venturers are guilty of the same crime. *Cote* does not stand for that proposition. The error in *Cote* was that the judge usurped the jury's factfinding function by stating his personal opinion that, "[i]t is inconceivable that you could find one of the defendants guilty and one not guilty. They are either not guilty or guilty on the evidence that came in in this case." *Id.* at 369. We also note it is not clear that *Cote* even involved a joint venture.

venture." Thus, contrary to the defendant's claim, the supplemental joint venture instruction did not foreclose the prospect of a lesser verdict being returned against Frank than against Dion.

*Order denying motion for new trial affirmed.*