## COMMONWEALTH *vs.* KEESHA D. VICKERS.

No. 02-P-438.

Suffolk. April 14, 2003. - November 17, 2003.

Present: LAURENCE, McHUGH, & COHEN, JJ.

*Larceny. Assault and Battery by Means of a Dangerous Weapon. Evidence,*
Self-defense. *Self-Defense. Practice, Criminal,* Instructions to jury, Argu-
ment by prosecutor, Judicial discretion, Assistance of counsel. *Constitu-
tional Law,* Assistance of counsel. *Due Process of Law,* Assistance of
counsel.

At the trial of an indictment charging larceny by stealing, the Commonwealth
    presented sufficient evidence to establish the asportation element of the
    crime beyond a reasonable doubt. [25-28]
At the trial of an indictment charging assault by means of a dangerous weapon,
    there was no error, much less a substantial risk of a miscarriage of justice,
    from the omission of an instruction on self-defense, where the only reason-
    able interpretation of the evidence was that the defendant was the aggres-
    sor and was not entitled to respond, when a store's security officer at-
    tempted to stop her, with a dangerous weapon. [29]
This court concluded that the cumulative effect of errors at a criminal trial —
    specifically, the prosecutor's closing argument, which embellished the
    evidence bearing on a key issue [29]; the judge's coercive response to the
    defendant's request for a new attorney [30-31]; and defense counsel's
    deficient performance when trial went forward after the defendant voluntar-
    ily absented herself [31-35] — created a substantial risk of a miscarriage
    of justice and warranted reversal of the defendant's convictions of larceny,
    assault by means of a dangerous weapon, and possession of a burglarious
    instrument.

COMPLAINT received and sworn to in the Boston Municipal
Court Department on June 19, 2001.

The case was tried before *Annette Forde,* J.

*Courtney Worcester* for the defendant.

*Susanne Levsen Reardon,* Assistant District Attorney, for the
Commonwealth.

COHEN, J. The defendant's trial on charges of larceny over

$250,[1] assault by means of a dangerous weapon,[2] and possession of a burglarious instrument[3] was beset with irregularities. First, the judge conditioned the allowance of the defendant's request for a change of counsel upon an increase in bail, prompting the defendant's hurried agreement to go forward with trial immediately. Then, after the jury were empanelled, the defendant did not return to the courtroom and eventually was found to have voluntarily disappeared. When the trial continued in the defendant's absence, defense counsel[4] refused to participate for more than a day of the two-day proceedings, lodging no objections, declining to cross-examine a key prosecution witness, and responding "no comment" when addressed by the judge. Finally, the prosecutor repeatedly made a significant misstatement of fact in closing argument.

The defendant was convicted of the larceny and assault charges.[5] On appeal, the defendant argues that the judge's linkage of her request for new counsel with an increase in bail was coercive and in violation of her constitutional rights; that the evidence of "asportation" was insufficient to sustain the larceny conviction; that a self-defense instruction should have been given; that the prosecutor's misstatement in closing argument created a substantial risk of a miscarriage of justice; and that trial counsel was ineffective in several respects, including her refusal to participate in the trial after the defendant's disappearance. Although not all of the defendant's points have merit, those that do, in the aggregate, persuade us that the convictions must be reversed.

We begin by addressing the substantive issues that arose during the trial, before turning to the defendant's aborted attempt to change counsel and her claims of ineffective assistance.

1. *Sufficiency of the evidence.*

a. *Facts.* Taken in the light most favorable to the Com-

---

[1] General Laws c. 266, § 30.

[2] General Laws c. 265, § 15B.

[3] General Laws c. 266, § 49.

[4] References to defense counsel are to trial counsel. The defendant is represented by new counsel on appeal.

[5] The judge allowed the defendant's motion for a required finding of not guilty on the burglarious instrument charge.

monwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the jury could have found the following facts. On June 18, 2001, at approximately 4:50 P.M., Michael Bailey, a plain clothes security officer at the Faneuil Hall Marketplace branch of a clothing store, was stationed on the second floor of the store. His attention was drawn to the defendant when he observed her selecting a large number of pairs of shorts, studying the security tags, and looking around at the store employees and other customers. He continued to watch the defendant as she brought the merchandise to a back corner of the store, and noticed that she was carrying a large beach-style bag with handles. After observing her for about ten minutes, Bailey summoned another plain clothes security officer, Glen Thompson, to come up to the second floor. When Thompson arrived, Bailey went down to the first floor. Thompson saw the defendant place the merchandise inside her bag.

Thompson then stepped outside the store's second floor doors onto the plaza of 60 State Street, where he could continue to watch the defendant through the glass. At that point, Thompson called Bailey on his cell phone to say that the defendant's bag was full. Bailey came up to the second floor and joined Thompson, who had reentered the store and was confronting the defendant. Thompson identified himself and asked the defendant to come to the security office. According to Thompson, she said that she "didn't do anything wrong with your merchandise," that "she knows the system, we cannot stop her," and that "there was nothing in [the] bag anymore."

By then, the defendant had removed the merchandise from her bag, although the testimony differed as to precisely when she did so. Bailey testified that the defendant's bag was empty by the time he joined Thompson, but that there was a big pile of shorts "right in that corner where she was." Thompson spoke of the defendant "tip[ping] over her bag with the merchandise in it," as he watched her through the glass, but also described her bag as "filled with merchandise" when he and Bailey first approached her.

In any event, Thompson and the defendant then began to argue, and the defendant pushed him as she made for the stairs leading to the first floor. When Thompson attempted to stop her,

the defendant tried to shove him down the stairs. As Thompson endeavored to regain his balance, Bailey ran down to the first floor and grabbed the defendant's bag. The defendant responded by pulling out a box cutter and waving it at the security officers. They backed off, and the defendant ran out of the store. Before she got far, Thompson and Bailey caught the attention of a Boston municipal police officer, Jeff DeRosa, who stopped the defendant, took the box cutter, and placed her under arrest.

Sixteen pairs of shorts (with a value of $862) were found in a pile where the defendant evidently had abandoned them. A pair of needle nose pliers, which, according to Thompson, were of a type often used to remove security sensors, later were retrieved by the police from the defendant's bag.

b. *Discussion.* The elements of larceny (by stealing) are (1) the unlawful taking and (2) carrying away (asportation) (3) of personal property of another (4) with the specific intent to deprive the person of the property permanently. See G. L. c. 266, § 30; *Commonwealth* v. *Mills,* 436 Mass. 387, 394 (2002). Although the defendant claims that there was insufficient evidence to make out the asportation element, we reach a different conclusion.

The defendant places much emphasis on the fact that she never left the store with the merchandise. However, it is well-recognized in Massachusetts and elsewhere that taking goods beyond a store's premises is not a necessary precondition to a larceny conviction; the element of asportation may be satisfied if the defendant's behavior establishes that he or she removed the goods from the store's control to his or her own. *Commonwealth* v. *Davis,* 41 Mass. App. Ct. 901, 901 (1996). See generally 50 Am. Jur. 2d Larceny § 25 (1995) ("The fact that the property was not actually removed from the owner's premises does not make the thief's dominion over it incomplete nor preclude a finding that there was an asportation"). Even if the defendant eventually abandoned the effort to remove merchandise from the premises, larceny may be established as long as the defendant removed it from the owner's control in the store. See, e.g., *McRae* v. *United States,* 222 A.2d 848, 849 (D.C. Ct. App. 1966) (defendant briefly concealed pants, then attempted to place them with other merchandise when he noticed

that he was being observed); *People* v. *Baker*, 365 Ill. 328, 330-332 (1936) (defendant went to rest room and hid merchandise under her coat; when questioned as she emerged, she returned to rest room and abandoned the items). Cf. *Commonwealth* v. *Luckis*, 99 Mass. 431, 432-433 (1868) ("It is not indeed necessary that the pocket-book . . . should have been removed from the pocket, if once within the grasp of the thief, to constitute larceny").

These principles are relevant even in cases involving self-service stores where it is anticipated that customers will remove goods from display areas and go through the store with them. Cf. *Lasky* v. *Economy Grocery Stores*, 319 Mass. 224, 227 (1946) (customers in self-service stores have conditional possession of goods). Self-service merchandise need not be taken from the premises in order to establish the defendant's larceny, as long as there is evidence, typically proof of concealment, that is inconsistent with an intent to complete a purchase. See, e.g., *Groomes* v. *United States*, 155 A.2d 73, 75 (D.C. 1959) (defendant removed items from shelf, put them in her purse, and closed it); *C.E.* v. *State*, 342 So. 2d 979, 980 (Fla. Dist. Ct. App. 1976) (defendant moved merchandise from its place of display to bag hidden under clothes rack).

Here, there was evidence that the defendant took a large number of pairs of shorts to a back corner of the store, where she placed them inside her beach bag. After being watched for some time by two different security officers, she dropped the merchandise in a pile, inferentially because she became aware of their surveillance. When confronted, her words and behavior evidenced consciousness of guilt. She said that she did not have anything in her bag "anymore," essentially admitting that earlier it had contained store merchandise. She then attempted to flee, threatening the officers when they tried to stop her. Finally, her bag was found to contain a pair of pliers like those often used to remove security sensors. From these facts, the jury, drawing reasonable inferences and employing common sense, were entitled to find beyond a reasonable doubt that, even if the defendant ultimately gave up her efforts to remove the goods from the premises, when she placed the items in her bag she did so with an intent that was inconsistent with purchasing the goods and had transferred control to herself.

2. *Entitlement to self-defense instruction.* The defendant argues that the trial judge was required to give a self-defense instruction although none was requested; however, a self-defense instruction was not supported by the evidence.

A self-defense instruction is warranted if the evidence, taken in the light most favorable to the defendant, establishes that the defendant had a reasonable apprehension that he or she was in danger of personal harm; could avoid harm only by resort to force; attempted to avoid physical combat or was unable to do so; and used only the force necessary in the circumstances. See generally *Commonwealth* v. *Williams,* 53 Mass. App. Ct. 719, 720-721 (2002) (discussing requisites of self-defense by use of nondeadly force).

In this case, the only reasonable interpretation of the evidence was that the defendant was the aggressor — pushing Thompson as she tried to flee and attempting to shove him down the stairs. Then, when Bailey tried to stop her by grabbing her bag, she responded by brandishing the box cutter. Even if she could be said to have reasonably perceived herself to be in danger of personal harm at this point, she nevertheless was not entitled to respond with a dangerous weapon. See *Commonwealth* v. *Young,* 56 Mass. App. Ct. 60, 66 (2002). Accordingly, given the state of the evidence, there was no error, much less a substantial risk of a miscarriage of justice, from the omission of an instruction on self-defense.

3. *Prosecutor's argument.* In closing argument, the prosecutor embellished the evidence, stating on three separate occasions that the plaintiff "zipped" closed her bag full of merchandise, even though there was no such testimony. This was inaccurate and improper. Furthermore, since the unsupported statement bore on the key question of the defendant's control and intent, the misstatement was significant. Even though the Commonwealth's evidence created a jury issue, the proof was not so overwhelming that we can be confident that the misstatement was inconsequential. Still, we are not persuaded that, by itself, this unpreserved error created a substantial risk of a miscarriage of justice. Instead, we consider it as one factor, which, together with other concerns discussed below, militates in favor of reversal.

4. *Judge's response to request for change of counsel.* The defendant had been out on bail for approximately three weeks when she appeared for trial.[6] When the case was called, there was discussion of possible plea dispositions (one year with six months to serve and two years of probation, recommended by the Commonwealth; two years suspended with an inpatient program, recommended by the defendant), both of which were rejected by the judge as too lenient.

After the judge announced that trial would proceed that day, defense counsel informed the judge that the defendant was dissatisfied with counsel's services and wanted a new attorney appointed. The judge asked the defendant for an explanation, and the defendant replied that she "didn't get to talk to [counsel] about the case," "[counsel] didn't come up to visit me [in jail]," and "[w]e didn't have much contact." When asked whether this was the only reason for her request, the defendant replied, "Yeah, because I didn't have time to talk to her about the case. This is just hitting me now, coming in here today. We haven't even discussed what options I have until just now." The defendant did admit, however, that she and her attorney had spoken about a plea that she had tendered several weeks earlier, but that had been rejected by the court.

The judge then stated:

> "Alright. Well I'll tell you what. We will set some more bail so that we know you'll be back here for trial. If you want a new attorney, we're going to have to find another attorney, set bail on this matter . . . so that we can . . ."

At this point, the defendant interjected and quickly withdrew her request, saying, "Please, please don't do that. I'm here for trial." No formal objection was made, and jury selection began.

We recognize that it is within a judge's discretion to refuse a request to replace appointed counsel, especially on the scheduled trial date. See *Commonwealth* v. *Chavis*, 415 Mass. 703, 711 (1993). We also recognize that a judge is authorized to make

---

[6]The defendant's initial bail was set on June 27, 2001, at $20,000 surety or $2,000 cash. She was unable to make bail and remained in jail until July 23, 2001, when her bail was revised to $500. The trial took place on August 16 and 17, 2001.

adjustments in bail upon a finding of changed circumstances. See G. L. c. 276, § 58. In the present case, however, although there may have been an adequate basis to deny the request as untimely and ill-founded,[7] the judge did not do so; and although the judge may have been concerned that the defendant now presented a greater risk of flight because it had become apparent that conviction could lead to a significant sentence, this was not explicitly articulated. We are left, therefore, with an unfortunate linkage between the defendant's request and an increase in bail, and cannot be confident that the defendant's sudden change of heart was free of coercion and consistent with her right to counsel. Cf. *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50-57 (1976) (right to counsel violated when defendant forced to choose between proceeding pro se or with unprepared counsel).

Nevertheless, in assessing whether this turn of events created a substantial risk of a miscarriage of justice, we must consider whether and in what way the defendant was harmed by having to proceed immediately to trial with counsel whom she wished to replace. We conclude that only if counsel's performance was inadequate would the defendant have suffered any prejudice from the judge's error. We therefore turn our consideration to the defendant's ineffective assistance arguments.

5. *Counsel's performance.* There is no need to address separately counsel's failure to request a self-defense instruction or her failure to object to the prosecutor's closing argument. We proceed directly to the troubling issue of counsel's behavior when the trial went forward after the defendant's disappearance.

Two preliminary observations about the parties' positions are in order. First, the defendant does not argue that the trial could not proceed in her absence or that the judge erroneously instructed the jury on this development.[8] See generally *Commonwealth* v. *Rivera*, 44 Mass. App. Ct. 452, 454-456 (1998).

---

[7] It was at least questionable whether counsel was unprepared. On the day in question as well as at an earlier hearing, she had shown herself to be conversant with the facts during plea discussions.

[8] Immediately after the defendant's disappearance the judge correctly instructed the jury to infer nothing from the fact that she was not there and that the defendant was presumed to be innocent and was not required to put on any evidence or, for that matter, to be present. Contrast *Commonwealth* v.

Her argument relates only to the way in which counsel reacted to the continuation of the trial. Second, the Commonwealth does not contend that the defendant's voluntary disappearance precludes her from raising ineffective assistance claims. Although the defendant voluntarily absented herself, thereby waiving her right to be present at trial and to confront the witnesses against her, she did not expressly waive her separate constitutional right to be represented by counsel and to receive effective assistance. See *Golden* v. *Newsome*, 755 F.2d 1478, 1481-1482 (11th Cir. 1985) (escape from custody at trial did not waive right to counsel at sentencing). Indeed, it is hard to imagine a situation calling for more assiduous representation than when a defendant is being tried in absentia.

Turning to the relevant facts, during the first day of trial, when the Commonwealth opened and Glen Thompson testified, defense counsel, although present in the courtroom, essentially refused to participate. She voiced no objections during direct examination and responded "no comment" when asked by the judge whether she wished to cross-examine or to object to the publication of an exhibit. After a break, when there was discussion of plans for the next day, counsel momentarily changed her mind about this strategy, indicating that if the trial were to proceed she would like to cross-examine Thompson. The judge noted that the witness already had been excused, but suggested that she would entertain a request to bring him back to testify during the defendant's case. Counsel did not make such a request, and Thompson never was examined by the defense notwithstanding his importance as an eyewitness to the events giving rise to the larceny charge and as the only named victim in the complaint on the charge of assault by means of a dangerous weapon.

On the second day of trial, counsel reverted to her initial ap-

---

*Muckle,* 59 Mass. App. Ct. 631, 634-639 (2003). She stated further that "it's quite possible that she has some type of emergency that we don't know about yet. So please do not, I'm going to repeat this, please do not infer anything whatsoever, positive, negative or otherwise, from the fact that the defendant is not currently in the courtroom." On the second day of trial, after hearing testimony outside the presence of the jury, the judge found that the defendant's disappearance was voluntary and, accordingly, that it was proper to proceed with the trial. This finding is unchallenged on appeal.

proach, objecting to the trial continuing and responding "no comment" when it was her turn to be heard. Then, after being admonished by the judge that even though the defendant was not present, the defendant was entitled to effective representation, counsel at last did what she should have done all along: she asked to have her objection to the ongoing proceedings noted and requested a mistrial, but agreed that if the trial continued she would "zealously defend [her] client to the best of [her] ability."

Counsel finally came to life during the testimony of the remaining witnesses: Michael Bailey, Jamil Downey, and Officer DeRosa. She raised objections during the Commonwealth's direct examinations and cross-examined the witnesses. When the Commonwealth rested, counsel delivered an opening statement, rested without calling any witnesses, and then gave a closing argument. She participated in colloquy when the jurors asked a question, and she successfully argued for a required finding of not guilty on the burglarious tool possession charge. The issue therefore reduces itself to whether counsel's passive resistance during the first part of the trial amounted to ineffective assistance.[9]

Under the two-pronged test of *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), to succeed on a claim of ineffective assistance, the defendant must show that counsel's performance "f[ell] measurably below that which might be expected from an ordinary fallible lawyer" and that, as a result, the defendant was deprived of "an otherwise available, substantial ground of defence." In addition, where, as here, the claimed deficiency may be viewed as a tactical decision, the first prong may be satisfied only if counsel's chosen strategy was "manifestly unreasonable." *Commonwealth* v. *Hill,* 432 Mass. 704, 718 (2000). In the peculiar circumstances presented, we conclude that it was.

However much counsel may have chafed at going forward in

[9]Although normally we are reluctant to entertain ineffective assistance claims on direct appeal, *Commonwealth* v. *McCormick,* 48 Mass. App. Ct. 106, 107 (1999), here the trial record provides all the facts necessary to decide the issue. Accordingly, we see no need for the issue to be considered in the context of a motion for a new trial, and we exercise our discretion to address it now. See *Commonwealth* v. *McCrae,* 54 Mass. App. Ct. 27, 29 n.2 (2002).

the absence of the defendant, and whatever her motivation,[10] it was a serious lapse in judgment to refuse to participate for more than a day as the Commonwealth proceeded with its case. Counsel did not simply refrain from cross-examining an important witness. See *Commonwealth* v. *Stevens*, 379 Mass. 772, 775 (1980) (tactical decision not to cross-examine prosecution witnesses did not constitute ineffective assistance in the circumstances). She deliberately declined to perform any defense functions, thereby depriving the defendant of meaningful representation for that portion of the trial. Moreover, counsel manifested her displeasure with the proceedings by repeatedly responding "no comment" when addressed by the court. Although we cannot be sure what the jury made of this behavior, coming as it did in the wake of the defendant's disappearance, they may well have inferred that counsel was upset with the defendant or believed that no defense was available.

The question remains whether, under the second prong of *Saferian*, *supra*, the defendant was deprived of "an otherwise available, substantial ground of defence." Put another way, we consider whether it can be concluded that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). This inquiry is necessarily somewhat speculative, but we infer sufficient prejudice to warrant appellate relief, when viewed against the backdrop of the other irregularities in the case. The defendant had no meaningful representation for a good portion of the trial; the testimony of a witness of singular importance to the case went entirely untested by objection or cross-examination[11]; and the jury may have received the impression that defense counsel was hostile to her client or giving up the

---

[10]It is conceivable that counsel mistakenly believed that this was an appropriate way to preserve the defendant's rights; but this does not obviate the problem. See *Hiner* v. *State*, 557 N.E.2d 1090, 1091-1093 (Ind. Ct. App. 1990) (reversal required on ineffective assistance grounds when counsel stood mute under the misguided belief that this would preserve defendant's rights when motion in limine was denied).

[11]It is inexplicable why counsel failed to seek to recall Thompson as the judge invited her to do. The Commonwealth's larceny case, while sufficient, was not indefensible; and there were inconsistencies between Thompson's and Bailey's versions of events that defense counsel could have probed. Thompson testified that when he first approached the defendant she was still carrying the

ghost. Indeed, this case comes close to falling within that rare category "where the defense was so botched that judgments on th[e] hypothetical question [whether better work might have accomplished something material] would be without value." *Ibid.*

Although counsel's unreasonable tactics contribute to our decision to reverse, this should not be misunderstood as a reward for deliberately unprofessional behavior. We have no reason to believe on this record that counsel was anything but misguided; and she may have benefited from earlier judicial intervention reminding her of her obligations to her client and the court. See Mass.R.Prof.C. 1.1, 1.3, 426 Mass. 1308, 1313 (1998) (obliging lawyer to provide client with representation that is both competent and zealous); Mass.R.Prof.C. 8.4, 426 Mass. 1429 (1998) ("It is professional misconduct for a lawyer to: . . . [d] engage in conduct that is prejudicial to the administration of justice").[12]

*Conclusion.* The aggregate missteps in this trial — the judge's coercive response to the defendant's request for a new attorney, defense counsel's deficient performance, and the prosecutor's overstated closing argument — created a substantial risk of a miscarriage of justice. Accordingly, we reverse the judgments of conviction.

> *Judgments reversed.*
>
> *Verdicts set aside.*

---

bag filled with merchandise. Bailey, on the other hand, stated that by then the defendant's bag was empty. Examination of Thompson, the claimed victim of the assault, may also have developed the otherwise unsupported theme that the defendant was not the aggressor in the encounter on the stairs.

[12]By way of contrast, see *In re Jeffery*, 321 Or. 360, 373-374 (1995), where a criminal defense attorney who threatened to refuse to put on a defense "for the avowed purpose of creating reversible error" was deemed in violation of DR 1-102(A)(4), the equivalent of new Mass.R.Prof.C. 8.4(d).